**Mark SISCO and Van Thompson,**

v.

**James LUPPERT, In His Official Capacity as Director of the Williamsport Water Authority; James Bricker, Jr., and Barry Miller, Sr.**

**James Luppert, In His Official Capacity as Director of the Williamsport Water Authority, Appellant.**

Commonwealth Court of Pennsylvania.

Argued April 3, 1995.

Decided May 10, 1995.

Robin A. Read, for appellant.

Kathleen O'Donnell, for appellees.

Before COLINS, President Judge, and DOYLE, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

The Williamsport Municipal Water Authority (Authority) appeals from an order of the Court of Common Pleas of Lycoming County (trial court) which granted Mark Sisco and Van Thompson's (Appellees) motion for special injunction, requiring the Authority to provide Appellees' boarding house with water service. We affirm.

Appellees reside at a boarding house at 111 Vine Avenue, which contains six separate rooms and a communal kitchen.[1] On August 23, 1993, the Authority terminated water service to the building in question as the landlord failed to pay the water bill for several months.[2] Appellees, thereafter, requested that the Authority restore water service to the building pursuant to the Utility Service Tenants Rights Act (USTRA), Act of November 26, 1978, P.L. 1255, 68 P.S. §§ 399.1–399.18. The Authority refused to restore

---

1. Appellee Mark Sisco lives in a room with a private bath and Appellee Van Thompson lives in a room which has access to two communal bathrooms.

2. Previously, in November of 1992, the Bureau of Codes of the City of Williamsport condemned the building as a result of the landlord's failure to repair various code violations. The Appellees, working together, successfully avoided condemnation of the property.

service as mandated by USTRA because of its position that USTRA did not apply to boarders of a rooming house, and as a result, the Authority was not required to provide the building with water.

On September 3, 1993, Appellees filed a complaint and request for injunctive relief with the trial court which entered an order directing the Authority to return water service to the property in question until a preliminary injunction hearing. On December 22, 1993, the trial court granted Appellees a preliminary injunction and ordered the Authority to continue to provide the building with water. The trial court found that USTRA did indeed apply to Appellees' building.

On July 29, 1994, the trial court granted a permanent injunction to Appellees and denied the exceptions to the decree nisi. The trial court ordered the Authority to continue to supply Appellees' building with water service, pursuant to USTRA.

On appeal before this Court, the Authority raises two issues.[3] First, the Authority argues that USTRA can only be enforced by the Attorney General.[4] The Authority asserts that since the legislature did not specifically accord the right of private citizens to maintain a cause of action utilizing USTRA, no citizen can enforce USTRA on his or her own. We disagree.

Our review of USTRA reveals that the trial court did not commit an error of law in granting Appellees the right to receive injunctive relief under USTRA. While USTRA does not explicitly grant individuals the right to petition the court for injunctive relief, we agree with the trial court's conclusion that USTRA implicitly permits citizens to bring an action for enforcing USTRA. For instance, Section 11 of USTRA, 68 P.S. § 399.11, specifically creates a right for a tenant to pursue an action that "the tenant may have under the law." This language indicates legislative intent to allow tenants, such as Appellees, a right of enforcement of USTRA via an action in equity with the courts.

Even though USTRA explicitly allows the Attorney General the authority to enforce USTRA, it does not give the Attorney General the *exclusive* duty to enforce USTRA. As a result, we hold that the legislature has not specifically limited the enforcement of USTRA, and therefore, we hold that the trial court did not err by allowing Appellees the opportunity to enforce USTRA against the Authority.

Second, the Authority argues that the trial court erred in ruling that USTRA applies to the Appellees, and, as such, the Authority is immune from the requirements as promulgated under USTRA. USTRA clearly sets forth a series of requirements that a utility must follow before it can properly discontinue service to any "residential building" for a landlord's non-payment of the utilities bills. First, a notice must be sent to the landlord to inform of the utility's intention to discontinue service.[5] Next the landlord has a duty to identify all tenants by name and address that reside in the "residential building."[6] The notice given to the tenants must include an explanation of how the utility service can be continued.[7] Additionally, this notice must afford the tenant the ability to receive utility service if the tenant pays "an amount equal to the bill of the landlord ratepayer for the 30–day period preceding the notice given to the tenants."[8] Further, USTRA outlines specifically and with particularity the exact rights and responsibilities of the tenants re-

3. Our scope of review in cases involving a permanent injunction is limited to whether the trial court abused its discretion or committed an error of law. *Fraternal Order of Police Lodge No. 5 v. City of Philadelphia,* 139 Pa.Commonwealth Ct. 256, 590 A.2d 384 (1991).

4. The Authority points to Section 12 of the USTRA which states, "The Attorney General shall have the power and it shall be his duty to enforce the Act." 68 P.S. § 399.12.

5. Section 3 of USTRA, 68 P.S. § 399.3.

6. Section 4 of USTRA, 68 P.S. § 399.4.

7. Section 6(3) of USTRA, 68 P.S. § 399.6(3).

8. Section 7 of USTRA, 68 P.S. § 399.7.

garding their ability to maintain utility service.[9]

■ Specifically, the Authority maintains that it is immune from the aforementioned requirements of USTRA because the Appellees do not live in a "residential unit" as defined by USTRA, but rather live in a boarding house which is not a traditional apartment dwelling. We disagree.

USTRA defines "residential building" as, "[a] building containing one or more dwelling units occupied by one or more tenants, but excluding nursing homes, hotels and motels." Section 2 of USTRA, 68 P.S. § 399.2. The trial court clearly analyzed why Appellees' building is defined as a "residential building" under USTRA.[10] For instance, the trial court found that Appellees used their building much like that of a "residential building." Further, the trial court found Appellees considered their room as their permanent home and not just a transient location such as a hotel or motel. Appellees also have their mail delivered to the building and keep all of their possessions there.

However, as the term "residential building" does not specifically include rooming houses in USTRA, we must determine whether it is proper for the courts to conclude that a rooming house can be defined as a "residential building." We must turn to the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991 for guidance in interpreting situations of this kind. Section 1921(b) of the Act, 1 Pa.C.S. § 1921(b), states that, "When the words of a statute are clear and free from ambiguity, the letter of the statute must not be disregarded under the pretext of pursuing its spirit." This Court has ruled that the object of interpreting a statute is to ascertain and apply the intention of the legislature and to give this intent full effect as to any provision contained therein. *Young v. Insurance Department*, 145 Pa.Commonwealth Ct. 587, 604 A.2d 1105 (1992).

■ The legislature, in enacting USTRA, clearly intended to combat against an innocent tenant suffering the loss of utility service because of a landlord's failure to pay. We must, in interpreting USTRA, maintain this legislative intention in this case as well. Appellees live as tenants in the building and pay the landlord rent for the right to do so. Therefore, if the Authority could simply ignore USTRA in this case, the Appellees would innocently suffer the loss of water service to the residence, even though they maintain payment to the landlord for the use of their room and common areas. Clearly, USTRA was promulgated to combat against situations of this kind, and as such, the trial court did not commit an error of law by determining that USTRA applies to the Appellees' building.

As the trial court committed no error of law, we will affirm its decision.

### ORDER

AND NOW, this 10th day of May, 1995, the order of the Court of Common Pleas of Lycoming County in the above-captioned matter is affirmed.

---

9. Section 7 of USTRA, 68 P.S. § 399.7.

10. This analysis can be found in the trial court's order and opinion which granted Appellees a

preliminary injunction in this matter and was filed on December 21, 1993. (89a–99a.)