Charles A. ALESSI, Jr. and Melissa D. Alessi, his wife, and Patrick S. Horwath and Roberta E. Horwath, his wife, Appellants,

v.

MILLCREEK TOWNSHIP ZONING HEARING BOARD, and Sheetz, Inc., a Pennsylvania corporation, Timothy and Sandra Birkmire, husband and wife, and Millcreek Township.

Commonwealth Court of Pennsylvania.

Argued Oct. 8, 2002.

Decided Dec. 5, 2002.

Reargument Denied Jan. 31, 2003.

John J. Shimek, III, Erie, for appellants.

Evan E. Adair, Erie, for appellee, Millcreek Twp.

James F. McCormick, Pittsburgh, for appellee, Sheetz, Inc.

Timothy M. Zieziula, Erie, for appellee, Millcreek Twp. Zoning Hearing Bd.

BEFORE: PELLEGRINI, J., FRIEDMAN, J., and KELLEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Charles A. Alessi, Jr. and Melissa D. Alessi, his wife, and Patrick S. Horwath and Roberta E. Horwath, his wife, (collectively, Appellants) appeal from the February 19, 2002, order of the Court of Common Pleas of Erie County (trial court) affirming the decision of the Millcreek Township Zoning Hearing Board (ZHB), which held that the proposal of Sheetz, Inc. (Sheetz) to sell gasoline in conjunction with its retail store constitutes a permitted

principal use as a "convenience store" pursuant to the Millcreek Township (Township) Zoning Ordinance (Ordinance). We reverse.

Sheetz leases property at the southeast corner of the intersection of State Route 99 and Interchange Road in the Township, where Sheetz proposes to construct a convenience store and self-service gasoline pumps. In the "B" Business district where the property is located, convenience stores are a principal permitted use under section 407(22) of the Ordinance, which provides:

> ### SECTION 407 "B" BUSINESS
>
> In a "B" Business District, land may be used and buildings and structures may be erected, altered or used only for the following:
>
> *PERMITTED USES*
>
> . . .
>
> 22. Grocery (including convenience) stores, meat, and poultry market, fish market, fruit and vegetable market.
>
> *OFF STREET PARKING*
>
> . . .
>
> 22. One (1) space for every 250 sq. ft.

(R.R. at 11a, parentheses in original.) Gasoline service stations are not permitted in the "B" Business district but are allowed as a permitted use in the "C" Business district. Specifically, section 408(18) of the Ordinance provides:

> ### SECTION 408 "C" BUSINESS
>
> In a "C" Business [District], land may be used and buildings and structures may be erected, altered or used only for the following:
>
> *PERMITTED USES*
>
> . . .
>
> 18. Gasoline service stations.
>
> *OFF STREET PARKING*
>
> . . .
>
> 18. Five spaces per bay.

(R.R. at 12a.) In addition, both convenience stores and gasoline service stations are permitted as separate principal uses in the Township's Resort–Business District pursuant to section 406–A of the Ordinance, which provides in relevant part:

> **SECTION I**—In the Resort–Business District, land may be used and buildings and structures may be erected, altered or used only for the following:
>
> *PERMITTED USES*
>
> . . .
>
> 6. Auto rentals, gasoline service stations
>
> 7. Bakeries, general stores, grocery markets, convenience stores, farmers markets
>
> *OFF STREET PARKING*
>
> . . .
>
> 6. Off–Street Parking to be determined by the following: Specific use, lot size, building size and anticipated number of patrons.
>
> 7. One (1) space for every 200 sq. ft.

(R.R. at 9a–10a.)

On May 4, 2001, Sheetz applied for a permit to construct a convenience store with self-service sale of motor fuels on the property. However, the Township Code Enforcement Officer disapproved Sheetz's application on grounds that the sale of motor fuels is not a permitted use in the "B" Business district. (*See* R.R. at 1a–2a.) Sheetz then appealed to the ZHB requesting a variance to permit the sale of motor fuels in a "B" Business district. Alternatively, Sheetz requested an interpretation of the Ordinance to determine whether the proposed sale of motor fuels qualifies as a permitted use in the "B" Business district under section 407(22) of the Ordinance.

The ZHB conducted an evidentiary hearing on Sheetz's appeal, and witnesses for Sheetz offered evidence on three differ-

ent theories under which Sheetz claimed relief: (1) Sheetz was entitled to a variance to allow the sale of gasoline; (2) Sheetz was entitled to sell gasoline as a permitted accessory use to the principal convenience store use; and (3) Sheetz was entitled to sell gasoline as a permitted principal use under section 407(22) of the Ordinance because the term "convenience store" encompasses the sale of gasoline.

Relevant to the latter theory, Stephen B. Augustine, Regional Director of Real Estate for Sheetz, testified with respect to the nature of the convenience store business. Augustine's credible testimony established, *inter alia*, that convenience stores are considered a separate industry with their own association,[1] (N.T. at 29, R.R. at 43a), and that it is Sheetz's custom, as well as the custom of convenience stores generally, to include facilities for the sale of gasoline at convenience store sites. Augustine specified that, nationally, 76.1% of convenience stores, old and new, sell gasoline;[2] in Erie County, 84.16%, or 101 out of 120 convenience stores, sell gasoline; and fourteen of the fifteen convenience stores he observed in the Township sell gasoline. (N.T. at 31–33, R.R. at 45a–47a.) Augustine acknowledged that Sheetz uses gas-pumping facilities at its convenience stores in order to draw customers and that Sheetz simply does not open stores without gas pumps.[3] However, Augustine stated that Sheetz stores do not offer any automotive services, and the proposed facility will not have any service bays. (N.T. at 24, 33, 51, 55, R.R. at 38a, 47a, 65a, 69a; *see also,* ZHB's Findings of Fact, Nos. 5(a)-(d), Appellants' brief at 25–26.)

On July 11, 2001, the ZHB voted to grant Sheetz's appeal, and on July 25, 2001, the ZHB issued its written adjudication. The ZHB denied Sheetz's claim for relief under both the variance theory and the accessory use theory. However, the ZHB concluded that the term "convenience store," as set forth in section 407(22) of the Ordinance, encompasses the sale of gasoline. Thus, the ZHB held that Sheetz's proposal constituted a permitted principal use under that section, stating:

[Sheetz] prevails, however, on its claim that the sale of gasoline is such an inherent aspect of a use as a "convenience store" that the term "convenience store" as it is used in [s]ection 407(22) of the Ordinance encompasses the sale of gasoline, and we so hold. We note that the term "gasoline service station," which appears in [s]ection 408(18), authorizing permitted use in C Business Districts does not accurately describe [Sheetz's] proposal. Indeed, the language of [s]ection 408(18) confirms as much when it recites the parking requirements as "five spaces per [service] bay." No ser-

1. This association is the National Association of Convenience Stores (NACS). Augustine stated that there are over 100,000 convenience stores in the United States today, and NACS has approximately 2,200 members; however, Augustine did not know the percentage of convenience stores represented by NACS. (N.T. at 30, 51–52, R.R. at 44a, 65a–66a.)

2. Augustine noted that, of all stores opened in 1980, 56% sold gasoline; of stores opened in 1990, 85% sold gasoline; and of stores opened in 1999, 93% sold gasoline. (N.T. at 34, R.R. at 48a.)

3. According to Augustine, approximately one-third of Sheetz's customers purchase only gasoline, while two-thirds purchase something from inside the store in addition to gasoline. (N.T. at 37–38, R.R. at 51a–52a.) Augustine did not know the percentage of people who purchased items from the store only and did not buy any gasoline. Augustine stated that Sheetz stores sell approximately 6,000 different retail items and that the proposed in-store area for such sales exceeds the area to be used for the sale of gasoline. (N.T. at 34–35, 37, 48a–49a, 51a.)

vice bays exist in a typical modern convenience store, and no automotive service is proposed here or authorized by our decision. In interpreting the Ordinance as we have in this case, we are mindful of the general rule that we are obliged to interpret the Zoning Ordinance in a manner most favorable to the free use of property for legitimate purposes. Our decision is faithful to that principle.

(ZHB's Adjudication at 3, Appellants' brief at 27.)

■■■ Appellants filed a land use appeal with the trial court,[4] which held argument on the matter without taking additional evidence. On February 19, 2002, the trial court issued an order affirming the ZHB and denying Appellants' land use appeal. The trial court concluded that Augustine's uncontroverted testimony provided adequate support for the ZHB's determination that gasoline sales are inherent to the principal business of convenience stores. Appellants now appeal to this court.[5]

■■ Appellants concede that Augustine's testimony supports the existence of a modern trend linking convenience stores and gasoline sales, and Appellants acknowledge that Sheetz views gasoline sales as an integral part of *its* convenience stores. However, Appellants argue that the ZHB erred and/or abused its discretion by interpreting the term "convenience store" *as used in section 407(22) of the Ordinance* to encompass the sale of gasoline. Appellants contend that, even if gasoline sales are a common component of the modern convenience store operation, the Ordinance here clearly indicates that, as such a principal use, Sheetz's proposed use of the property is not permitted in the Township's "B" Business district. We agree.

■■ In concluding otherwise, the ZHB employs a flawed analysis that focuses on what the Sheetz proposal is **not** rather than what it **is**. Specifically, the ZHB reasons that, because Sheetz's proposal involves no service bays or automotive "service," it is **not** a "gasoline service station" as permitted under section 408(18) of the Ordinance.[6] Thus, the ZHB determined

---

4. The Township, Sheetz and the property owners, Timothy and Sandra Birkmire, each filed a Notice of Intervention in the matter.

5. Where, as here, the trial court does not take additional evidence, our scope of review is limited to determining whether the ZHB abused its discretion or committed an error of law. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983). The ZHB abuses its discretion when its findings are not supported by substantial evidence in the record, by which we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue of whether a proposed use falls within a particular category in a zoning ordinance is a matter of law. *Sunnyside Up Corporation v. City of Lancaster Zoning Hearing Board*, 739 A.2d 644 (Pa. Cmwlth.1999), *appeal denied*, 563 Pa. 636, 758 A.2d 666 (2000); *Gustin v. Zoning Board*

*of Sayre Borough*, 55 Pa.Cmwlth. 410, 423 A.2d 1085 (1980).

6. Appellants contend that the Ordinance does not *require* service bays as part of a gasoline service station use; rather, Appellants maintain that a reasonable reading of the parking requirement is that *if* a gasoline service station has any bays at all, it must have at least five parking spaces for each of those bays. We agree. In viewing service bays as an *essential* component of a gasoline *service* station, the ZHB ignores section 406–A(6) of the Ordinance. That section, which lists "gasoline service stations" as a principal permitted use in the Resort–Business District, does not mention bays; rather, it requires off-street parking for "gasoline service stations" as determined by specific use, lot and building size, and the anticipated number of patrons. (R.R. at 9a, 10a.).

that the Sheetz proposal is a "convenience store" as intended in section 407(22) of the Ordinance, notwithstanding the addition of gasoline pumps.

The question before the ZHB, however, was **not** whether the addition of self-serve gasoline pumps converts Sheetz's proposed convenience store into a gasoline *service* station under section 408(18) of the Ordinance but, rather, whether Sheetz's proposed sale of gasoline is permitted in the "B" Business district under section 407(22) of the Ordinance. A straightforward reading of the Ordinance establishes that the answer to this question is no.

Although it does not provide a specific definition, the Ordinance nevertheless imparts an unambiguous meaning to the term "convenience" store as used in section 407(22). Through the insertion of the parenthetical phrase "(including convenience)" between "grocery" and "stores," section 407(22) of the Ordinance leaves no doubt that a "convenience" store is not a separate and distinct entity but, rather, is a species of grocery store. As such, it is apparent that the use does not encompass gasoline sales, which, in fact, are totally omitted from the "B" Business district.[7] Our reading of section 407(22) of the Ordinance is reinforced by the fact that, in relegating convenience stores to their identity as a type of grocery, the section places the use together with meat, poultry, fish, fruit and vegetable markets, all of which are traditional retail food enterprises.[8]

7. We note that, even in zoning districts that do not allow gasoline service stations as a permitted use, this court has recognized the trend to include gas sales at convenience store sites. Thus, notwithstanding that gasoline pumps also are an essential part of a service station, we have discerned no impediment to gasoline pumps *as an accessory use* to the principal use of a convenience market, *where the applicable ordinance permits such an accessory use. See e.g., Borough of Fleetwood v. Zoning Hearing Board*, 538 Pa. 536, 649 A.2d 651 (1994); *Food Bag, Inc. v. Mahoning Township Zoning Board of Adjustment*, 51 Pa.Cmwlth. 304, 414 A.2d 421 (1980). The Ordinance here, however, restricts accessory uses in business districts to those uses permitted in residential districts, which does not include gasoline sales. (Section 414(c)(1) of the Ordinance.) That the Ordinance does not permit the sale of gasoline as accessory use to a convenience store further supports our conclusion that such sales are not encompassed within that principal use.

8. Because we conclude that section 407(22) of the Ordinance is unambiguous in this regard, we disagree with the ZHB that we must interpret the Ordinance in a manner most favorable to Sheetz's use of property. *See* section 603.1 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, added by section 48 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10603.1 (stating that, in interpreting the language of zoning ordinances to determine the extent of the restriction upon the use of property, the language shall be interpreted, *where doubt exists as to the intended meaning of the language written and enacted by the governing body*, in favor of the property owner and against any implied extension of the restriction); *Sunnyside Up* (holding that, because zoning restrictions are in derogation of property rights, where a term in a zoning ordinance is undefined, *an ambiguity in that term* must be construed in favor of the property owner and the least restrictive use of the land). Further, we point out that, when a term is undefined, we must apply its plain, ordinary, usually understood meaning, *V.S.H. Realty, Inc. v. Zoning Hearing Board*, 27 Pa. Cmwlth. 32, 365 A.2d 670 (1976), which, generally, is drawn from dictionaries. *Kissell v. Ferguson Township Zoning Hearing Board*, 729 A.2d 194 (Pa.Cmwlth.1999). Merriam–Webster's Collegiate Dictionary 252 (10th ed.2001) defines "convenience store" as "a small often franchised market that is open long hours." Thus, even as recently as 2001, the definition of "convenience store" does not include any mention of gasoline sales. Moreover, when determining the meaning of an undefined term, it is appropriate to construe it with regard to context. *Sunnyside Up.* As we discussed, section 407(22) of the Ordinance places convenience stores in a context limited to retail food markets. Thus, neither the context of the Ordinance nor the dictio-

Today, gasoline pumps may be considered a customary, though certainly not mandatory, accompaniment to a retail convenience food store business. However, such pumps also are, undeniably, an essential part of the gasoline service station business, which, traditionally, has been considered dissimilar to, and separate from, the retail food business.[9] By addressing the marketing of gasoline separately from the sale of convenience foods, the Ordinance here reflects this traditional approach. Thus, as this court stated in *Gustin v. Zoning Board of Sayre Borough*, 55 Pa.Cmwlth. 410, 423 A.2d 1085, 1086 (1980):

> We recognize the current trend, put into the record here by the owner, toward the selling of gasoline, in addition to other commodities, by local retail convenience stores, particularly by the use of self-service gasoline pumps. But the courts would be overreaching judicial authority if they were to regard the categories in a zoning ordinance as being automatically rewritten to embrace such a trend. Any updating of zoning ordinance categories must be left to the local lawmakers who enacted it.

Here, section 407(22) of the Ordinance clearly and unambiguously separates the sale of groceries from the sale of gasoline.[10] Therefore, Sheetz's proposal to combine the two in the "B" Business district as parts of a single convenience store use runs counter to the terms of the Ordinance. Because the ZHB erred in holding otherwise, we reverse the trial court order affirming that decision.[11]

## ORDER

AND NOW, this 5th day of December, 2002, the order of the Court of Common Pleas of Erie County, dated February 19, 2002, is hereby reversed.

DISSENTING OPINION BY Senior Judge KELLEY.

I respectfully dissent.

In interpreting the provisions of a zoning ordinance, undefined terms must be given their plain and ordinary meaning. 1 Pa.C.S. § 1903(a); *Kissell v. Ferguson Township Zoning Hearing Board*, 729 A.2d 194 (Pa.Cmwlth.1999). In addition, a zoning hearing board is the entity responsible for the interpretation and application of the zoning ordinance, and its interpretation of its own ordinance is entitled to great deference from a reviewing court. *Smith v. Zoning Hearing Board of Huntingdon Borough*, 734 A.2d 55 (Pa.

---

nary definition describes the term "convenience store" as an operation encompassing gasoline sales.

**9.** *See e.g., Appeal of Atlantic Richfield Co.*, 77 Pa.Cmwlth. 310, 465 A.2d 1077 (1983); *Gustin; Food Bag; V.S.H. Realty.*

**10.** Moreover, as previously indicated, gas sales are permitted in conjunction with convenience stores in the Township's Resort Business District. In section 406–A(7) of the Ordinance, convenience stores are permitted as a principal use in that district, this time without enclosure in parentheses, together with bakeries, general stores, grocery markets and farmer's markets. (R.R. at 9a, 11a.)

Gasoline sales also are permitted in that district, pursuant to section 406–A(6), as a principal use distinct and separate from that of the convenience store use. Section 203(B) of the Ordinance specifically allows for such mixed occupancy, so long as the regulations for each use apply to the portion of the building or land so used. (R.R. at 7a.)

**11.** Because the Ordinance here is not ambiguous, there is no need to resort to the rules of statutory interpretation to discern its meaning. However, we agree with Appellants that, if statutory interpretation were warranted, application of those rules would yield the identical result, i.e., that Sheetz's proposed use is not permitted in the "B" Business district.

Cmwlth.), *petition for allowance of appeal denied*, 561 Pa. 664, 747 A.2d 904 (1999).

In this case, the ZHB determined that the term "convenience store", as used in Sections 407(22) and 406–A(7) of the Ordinance, contemplates a use which includes the sale of gasoline. As the Majority correctly notes, the evidence found credible by the ZHB overwhelmingly supports the conclusion that "convenience store", as that term is commonly understood, includes the sale of gasoline. Indeed, 14 of the 15 "convenience stores" presently in existence in the Township sell gasoline.

In addition, as the Majority also correctly notes, this Court may look to dictionaries in determining the plain and ordinary meaning of undefined terms in a zoning ordinance. *Kissell.* The American Heritage Dictionary of the English Language: Fourth Edition (2000) defines "convenience store" as "[a] small retail store that is open long hours and that typically sells staple groceries, snacks, *and sometimes gasoline.*" (emphasis added).[1]

Moreover, and more importantly, the Majority concedes that the "convenience store" use, as stated in 406–A(7) of the Ordinance, encompasses the sale of gasoline. *See* Majority Opinion at 10 fn. 10. It is a well settled principle of statutory construction that a word or phrase used in one place in a statute will be construed to mean the same when it is used elsewhere in the same statute. *Housing Authority of County of Chester v. State Civil Service Commission,* 556 Pa. 621, 730 A.2d 935 (1999); *Commonwealth v. Maloney,* 365 Pa. 1, 73 A.2d 707 (1950). Thus, the "con-

venience store" use, as stated in all sections of the Ordinance, either includes or does not include the sale of gasoline.

In short, while granting the proper deference to the ZHB in its interpretation of its Ordinance, it is clear that the ZHB neither abused its discretion nor committed an error of law in determining that the "convenience store" use as stated in Section 407(22) of the Ordinance includes the sale of gasoline. Accordingly, unlike the Majority, I would affirm the order of the trial court affirming the decision of the ZHB.

---

1. As the Majority relies upon a differing definition of "convenience store", as defined in a different dictionary, it could be concluded that a doubt exists as to the intended meaning of the "convenience store" use as stated in the Ordinance. Any doubt as to the meaning of the term must be resolved in favor of the landowner and the least restrictive use of the land. Section 603.1 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, added by Act of December 21, 1988, P.L. 1329, *as amended,* 53 P.S. § 10603.1; *Kissell.*