James C. KEENER, Appellant

v.

RAPHO TOWNSHIP ZONING HEARING BOARD, LANCASTER COUNTY, Pennsylvania; and Rapho Township, Lancaster County Pennsylvania.

Commonwealth Court of Pennsylvania.

Argued June 17, 2013.

Decided July 31, 2013.

Scott T. Wyland, Carlisle, for appellant.

Jill M. Laskowitz, Lancaster, for appellee Rapho Township.

BEFORE: McGINLEY, Judge, and LEADBETTER, Judge, and COLINS, Senior Judge.

OPINION BY Judge McGINLEY.

James C. Keener (Keener) appeals from the order of the Court of Common Pleas of Lancaster County (common pleas court) which affirmed the denial by the Rapho Township Zoning Hearing Board (ZHB) of Keener's Application for a Special Exception.

Keener is the owner of a 130–acre parcel located in the Agricultural Zoning District. He has an equitable interest in an adjoining 3–acre lot (collectively Property). The Property is being used as an active farm. The Property contains 60 acres used for growing crops, a breeding herd of Scottish Highland Cattle, an 18th century bank barn[1], a farmhouse, an equestrian trail and a pond.

On March 16, 2010, Keener sought approval of the following mixed use of the Property: use of a historically restored bank barn and adjacent farmhouse for a banquet/wedding/meeting venue; use of the outdoor areas for a banquet/wedding/meeting venue; farm tours; guided walking and riding tours; bird watching; hayrides; picnicking; walking/equestrian trails; and use of the pond and paddle boats. Special Exception Application, Zoning Narrative, March 16, 2010, at 1; Reproduced Record (R.R.) at 3a.

Keener submitted that given the unique combination of uses, the proposed use, as a whole, did not fit neatly within a single use, but qualified as several uses.

### Parks and Playgrounds Permitted By Right

First, Keener asserted that the proposed use must be permitted under Section 201.2.6 of the Rapho Township Zoning Ordinance (Zoning Ordinance) which permits "Park and Playgrounds" by right in the Agricultural Zoning District.[2]

By definition, "Parks and Playgrounds" includes a wide range of recreational activities, including, "banquet and social halls," as long as they are "not operated on a commercial basis." Zoning Ordinance, § 112. Section 112, of the Zoning Ordinance defines "Parks and Playgrounds" as follows:

PARKS AND PLAYGROUNDS—*Those facilities designed and used for recreation purposes by the general public that are not operated on a commercial basis.* This definition is meant to include the widest range of recreational activities, excluding adult-related uses, amusement arcades, amusement of theme parks, golf courses, off-track betting parlors, racetracks, and shooting ranges. Such uses may include: (Emphasis added)

1. Outdoor park and recreation facilities, including athletic fields, courts, playgrounds, open play areas, stadiums, skating rinks, skateboard, stunt-bicycle

---

1. A bank barn is a style of barn noted for its accessibility at two separate ground levels.

2. Other permitted uses in the Agricultural Zoning District include: bed and breakfasts, forestry uses, horticultural uses, public utilities structures, private schools, and single family detached dwellings.

or BMX bicycle courses, and other similar uses.

2. Indoor recreation facilities, including community centers, gymnasiums, weight and fitness rooms, tennis courts, gymborees, game rooms, bowling alleys, skating rinks, locker rooms, and other similar features.

3. Outdoor passive recreation facilities, including picnic pavilions, hiking, biking and fitness trails, park benches, fountains, statues and other memorials, barbeque grills, ponds, natural and cultural exhibits, amphitheaters, and other similar uses.

4. Indoor community service uses and activities, including meeting rooms, classrooms, theaters, auditoriums, *banquet and social halls*, scout cabins, libraries, museums and galleries of materials that are not for sale, clubhouses, accessory cafeterias and kitchens, and other similar uses. (Emphasis added)

5. Outdoor community service facilities and activities, including fairgrounds, community bulletin boards and other similar uses.

6. Indoor and outdoor swimming pools, including related amenities, like bathhouse, wading pools, spas, snack bars, and other similar uses.

7. Uses accessory to the above permitted uses, including parking and loading spaces, signs, offices, rest rooms, maintenance equipment storage areas and buildings, lights, waste receptacles and dumpsters, bleachers, and other similar uses.

Zoning Ordinance, § 112.

According to Keener but for "the prohibition against operations on a commercial

basis, the Proposed Use would qualify as Parks and Playgrounds." Application for Special Exception, Zoning Narrative at 3; R.R. at 5a. He asserted that the proviso, which distinguished between commercial and non-commercial operations, violated the uniformity requirement of Section 605 of the Municipalities Planning Code[3] (MPC) because it treated the same use differently based on the form of ownership.

In the alternative, Keener asserted that the proposed use met the Special Exception requirements of an "Adaptive Reuse of Existing Agricultural Building."

Section 401.1 of the Zoning Ordinance permits the "Adaptive Reuse of Existing Agricultural Buildings" in the Agricultural Zone by Special Exception.[4] Section 401.3 of the Zoning Ordinance sets forth the Specific Criteria for any such proposed use. To qualify as an Adaptive Reuse of Existing Agricultural Building, the proposed use "must be permitted [elsewhere] within the Township, but not be permitted by right, special exception or conditional use, within the Agricultural Zone." Zoning Ordinance, § 401.3. The proposed use must not adversely impact adjoining uses.

Keener contended that the proposed use qualified as a "Commercial Recreational Facility" or "Restaurant" both of which are permitted in other zones, but not in the Agricultural Zone.

A "Commercial Recreational Facility" is defined as:

An activity operated as a business, open to the public, for the purpose of public recreation or entertainment, including, but not limited to bowling alleys, drive-

3. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10605.

4. Under Section 201.4, other Special Exception uses in the Agricultural Zoning District include: churches, clubhouses, commercial

livestock operations, commercial poultry operations, golf courses, home occupations, kennels, municipal services, riding stables, rural occupations, sawmills, tourist farms, two family conversions, and family farm support businesses.

in motion picture facilities, swimming pools, health clubs, miniature golf courses, museums, etc. This does not include adult-related uses or amusement arcades, as defined herein.

Zoning Ordinance, § 112.

A "Restaurant" is defined as:

An establishment that serves prepared food primarily on nondisposable tableware, but can provide for incidental carry-out service so long as the area used for carry-out service does not exceed five percent (5%) of the total patron seating area nor eighty (80) square feet (whichever is less). Caterers shall be included in this definition.

Zoning Ordinance, § 112.

In a second alternative, Keener argued that the use met the definition of a "Tourist Farm" which is defined in Section 459 of the Zoning Ordinance as follows:

TOURIST FARM—A commercial recreation use that is principally designed to portray an agrarian life-style and/or farming technologies. Such use may include the following accessory uses, only if they are incidental to, and located upon the same lot as, the principal use: bed and breakfast, restaurant, snack bar, gift shop, roadside stand, buggy or wagon rides, and similar uses.

Zoning Ordinance, § 459.

Tourist Farms are permitted in the Agricultural Zone by Special Exception under Section 201.4.13.

As a final alternative, Keener submitted that the proposed use should be permitted by Special Exception under Section 107 of the Zoning Ordinance as a "Use Not Otherwise Provided For."

### Hearings before the ZHB, Remand and Decision

Public hearings were held on April 6, 2010, May 4, 2010, and June 1, 2010. Numerous neighboring property owners objected to the Application.

On July 6, 2010, the ZHB voted to deny the Application. The ZHB found that the proposed use of the Property as a rental facility was to generate income and the proposed use was commercial in nature. Board Decision, July 6, 2010, Finding of Fact (F.O.F.) No. 6 at 4; R.R. at 25a. The use of the Property as a banquet/rental facility would be available to the public via reservation only. Board Decision, July 6, 2010, F.O.F. No. 19 at 6; R.R. at 27a.

The ZHB rejected Keener's request for Special Exception for an "Adaptive Reuse of Existing Agricultural Building" under Section 401.1 of the Zoning Ordinance because the proposed use encompassed more than the mere use of an "Agricultural Building." The ZHB interpreted "Agricultural Building" to apply to the actual bank barn only, and not the farmhouse (which it deemed to be a residential use), or the outdoor areas of the Property including the yard, trails and pond. In addition, the ZHB found that although Keener met part[5] of the standard of Section 401.3 of the Zoning Ordinance, Keener did not comply with the parking or water supply and sewage disposal requirements, and he failed to establish that the proposed use did not adversely impact adjoining residential uses due to the hours of operation, noise, and insufficient screening.

With regard to Keener's request to operate the Property as a "Tourist Farm"

---

5. Apparently, for purposes of its analysis under Section 401.1 of the Zoning Ordinance, the ZHB accepted Keener's classification of the proposed use as a "Commercial Recreational Facility" which was "permitted elsewhere in the Township [i.e., the Interchange Commercial, Highway Commercial and Commercial Recreation Zones] but cannot be permitted by right, special exception or conditional use within the Agricultural Zoning District."

the ZHB found that the principal use of the farm was not principally designed to portray an agrarian lifestyle of farming technologies. The proposed use was primarily designed to accommodate weddings and other events.

The ZHB further found that Keener's proposed use was not a "Park or Playground" as the term is defined in Section 112 of the Zoning Ordinance because the facility would not be available for use by the general public. The proposed use would be operated on a commercial basis and only be available to those who pay for the use of the facilities. Board Decision, July 6, 2010, F.O.F. No. 38 at 10; R.R. at 31a.

Finally, the ZHB found that because the proposed use was classified as a "Commercial Recreational Facility" it could not be considered to be a "Use Not Otherwise Provided For" under Section 107 of the Zoning Ordinance.

Keener filed a notice of appeal. The common pleas court found no reason to overturn the ZHB, but noted an inconsistency in the ZHB's decision. According to the ZHB, the proposed use was a "Commercial Recreational Facility [6]" because it was open to "the public," but it was not a "Park or Playground" because it was not open to the "general public [7]." The common pleas court was unaware of any reasonable distinction between the terms "public" and "general public" and pointed out that if Keener's proposed use was not open to the public, it could not, by definition, be a "Commercial Recreational Facility."

Because the ZHB provided no explanation for the distinction between the "public" and the "general public" the common pleas court remanded the matter to the ZHB to clarify its decision with regard to whether the proposed use qualified as a "Commercial Recreational Facility" and if not, whether such use satisfied the requirements of Section 107 of the Zoning Ordinance as a "Use Not Provided For."

On remand, the ZHB held a hearing on August 2, 2011. Keener sought to present the expert testimony of Harry Roth (Roth), the Township's former zoning officer who helped to write the Zoning Ordinance. According to Keener's offer of proof, Roth would have testified that the proposed use would have come within Section 107 of the Zoning Ordinance as a "Use Not Provided For."

The ZHB denied Keener's request to present additional evidence. The ZHB found that the uses proposed by Keener were permitted in other zoning districts within the Township. The ZHB found that the principal use was a "banquet facility" which would accommodate wedding receptions, reunions, corporate retreats and other similar events. It also found that the use was a "restaurant-type use" which is permitted in the Neighborhood Zone and Interchange Commercial Zone, but not in the Agricultural Zone. Board Decision, September 6, 2011, F.O.F. No. 2. at 3; R.R. at 106a.

The ZHB did not address the distinction between "public" and "general public" but instead denied the request for Special Exception under Section 107, because the proposed use *was* provided for in the Ordi-

---

6. Again, "Commercial Recreational Facilities" are not permitted in the Agricultural Zone except through the "Adaptive Reuse of Agricultural Building" provision which allows such use only if not otherwise permitted in the Agricultural Zone and the other specific criteria are met.

7. To reiterate, the ZHB rejected Keener's position that the use was permitted in the Agricultural Zone as a "Park or Playground." The ZHB found that the use did not meet the definition of "Park or Playground" because it was not "open to the general public" since only those *who paid a fee* could use it.

nance as a "restaurant-type use." Keener again appealed the ZHB's decision to the common pleas court. Keener argued that the ZHB exceeded its authority by raising *sua sponte* the issue of whether the proposed use was a "restaurant-type use." He also argued that denying him the right to present the testimony of Roth violated his right to due process.

The common pleas court affirmed the ZHB. After considering the parties' arguments on the issue of the "public" versus "general public" distinction, the common pleas court recognized that there was a reasonable distinction between the terms as they appeared in the Ordinance.

> The ordinance defines 'park' as '[t]hose facilities designed and used for recreation purposes by the general public that *are not operated on a commercial basis.*' (Ordinance, § 112). A 'commercial recreation facility' is '[a]n activity *operated as a business,* open to the public, for the purpose of recreation and entertainment.' *Id.*
>
> Facilities open to the general public include parks and community recreation facilities operated as non-commercial ventures (Ordinance, § 112). These facilities are open to everyone. On the other hand, facilities open to the public include drive-in movie theaters, bowling alleys and health clubs are operated as commercial ventures. (*Id.*). These facilities are open to anyone who pays the owner for their use. Viewing the sections of the ordinance at issue in this context, the Board's interpretation of the term 'general public' to apply to any individuals and 'public' to apply only to

individuals who pay to use a particular facility are not unreasonable and fall within the scope of deference to be afforded by a reviewing court.

> * * * *
>
> Appellant [Keener] planned to rent the facility to members of the public for use as a banquet facility and rental venue. Therefore, it is not open to the 'general public' as that term is construed by the Board. Because the Board found that Appellant [Keener] intended to generate income from the Property in the manner he proposed and '[t]he proposed uses are commercial in nature' ... the Board likened Appellant's [Keener] proposed use to a general commercial recreational facility.... Because Appellant's [Keener] proposed use can be categorized as a 'commercial recreation facility' under the ordinance, the proposed use is not permitted in the agricultural zone, and section 107 does not apply.

Common Pleas Court Opinion, November 27, 2012, at 6–7; R.R. at 87a–88a. (Emphasis in original).

With regard to Keener's claim that the ZHB denied his Application without affording him an opportunity to present evidence, the common pleas court noted that Keener, himself, introduced the notion of a Restaurant-type use in his Application. Therefore, he was on notice and had the opportunity to develop his argument and present Roth's testimony at the 2010 hearings.

### Keener's Appeal

■ Keener now appeals[8] and raises seven issues: (1) whether Section 112 of

---

8. Where the common pleas court has not taken additional evidence, this Court's scope of review is limited to a determination of whether the municipal body has committed an error of law or a manifest abuse of discretion. *Allegheny West Civic Council, Inc. v. Zoning Board of Adjustment of the City of Pittsburgh,* 547 Pa. 163, 689 A.2d 225 (1997). An abuse

of discretion occurs when findings are not supported by substantial evidence in the record. *Alessi v. Millcreek Township Zoning Hearing Board,* 814 A.2d 278 (Pa.Cmwlth. 2002).

This Court is not bound by the common pleas court's conclusions of law and may draw its own inferences and reach its own

the Zoning Ordinance imposes an illegal restriction upon the ownership of property to be used as "Parks and Playgrounds" by permitting a number of commercial uses, but only where not operated on a commercial basis; (2) whether, as used in the Zoning Ordinance, the term "public" refers to only those individuals who pay to use a particular facility where the term "general public" refers to any individuals; (3) whether Section 401.1 of the Zoning Ordinance, permitting the Adaptive Reuse of an Agricultural Building by Special Exception limits such adaptive reuses to uses carried on solely within the walls of the agricultural building; (4) whether a farmhouse is an "agricultural building"; (5) whether it is proper for a zoning hearing board to deny an application for Special Exception on the basis that approvals from other bodies have not yet been obtained, rather than granting approval with the condition that such third party approvals be obtained; (6) whether it is an error or an abuse of discretion to find that a proposed use meets the definition of a Restaurant under the Zoning Ordinance where the issue was not raised during the hearing and no evidence at all was introduced to support the position that the proposed use meets that definition; and (7) whether Keener's due process rights were violated when the ZHB raised new issues after the close of any evidentiary hearing while also denying Keener's request to present additional evidence?

conclusion. *Urban v. Dollar Bank*, 725 A.2d 815 (Pa.Super.1999). Where a court finds a determination to be improper, it has the authority to set aside or modify any action, decision or order of the governing body, agency or officer of the municipality brought up on appeal. *Id.*

## 1.

### *Does the Exclusion of Banquet Facilities Operated on a "Commercial" Basis Result in an Unlawful Regulation of Land Ownership?*

First, Keener argues that the common pleas court erred when it upheld the ZHB's determination that his proposed banquet facility use was not permitted in the Agricultural Zone under the category of "Parks or Playgrounds" because he proposed to carry out such activities for a fee. He contends that the common pleas court erroneously equated the phrase "on a commercial basis" to one where there is a fee or charge for the use, whereas "non-commercial basis" meant free to the general public or an open, communal-type use where no fee is charged for the use.

Again, the definition of "Parks and Playgrounds" includes: "[t]hose facilities designed and used for recreation purposes by the general public *that are not operated on a commercial basis.*" Zoning Ordinance, § 112 (Emphasis added). A "banquet facility" is one of the enumerated uses listed as the type of "Parks and Playgrounds" use permitted by right in the Agricultural Zone.[9]

Keener contends that by restricting the uses to those that "are not operated on a commercial basis" the Zoning Ordinance illegally restricts ownership of land used as "Parks and Playgrounds" because it prohibits a "for-profit" owner from operating the same permitted use as a "nonprofit" owner, without any discernible rela-

9. As pointed out by Keener, each accessory element of his proposed use (picnicking, trails, pond, and paddle boats) is either expressly enumerated in the definition of Parks and Playgrounds or is clearly impliedly included, particularly when the definition is intended to "include the widest range of recreational activities." Zoning Ordinance, § 112.

tionship to public health, safety, morals or general welfare.

Keener relies on *Ludwig v. Zoning Hearing Board of Earl Township*, 658 A.2d 836 (Pa.Cmwlth.1995), where this Court was asked to answer whether Earl Township's Zoning Ordinance (zoning ordinance) created zoning provisions which were not uniform for each class of uses within Earl Township's rural districts.

There, Charles, Gloria and Timothy Martin (Landowners) sought a variance under the zoning ordinance to use their property as a privately operated, commercial, golf driving range. Section 701 of the zoning ordinance excluded for-profit golf driving ranges but permitted the identical use if operated by a public or private nonprofit agency. Section 701 of Earl Township's Zoning Ordinance permitted the following uses in the rural district:

> Township use, park, playground or similar *non-commercial recreational area owned and operated by a public or private non-profit agency;* school, church, cemetery . . .

*Ludwig*, 658 A.2d at 837. (Emphasis added).

The zoning hearing board granted a variance to landowners to use their property as a for-profit golf course. The zoning hearing board held that "the [z]oning ordinance creates an irrational distinction between profit and non-profit entities which is *unrelated to the actual use of the land and which does not serve a legitimate zoning purpose.*" *Ludwig*, 658 A.2d at 837. (Emphasis added).

The Court of Common Pleas of Lancaster County (trial court) reversed finding that the zoning hearing board had improperly substituted its judgment for that of the drafters of the zoning ordinance by rejecting the distinctions set forth in the zoning ordinance.

On appeal, this Court reversed the trial court and reinstated the decision of the zoning hearing board which recognized the illegality of the zoning ordinance. This Court found that in making the distinction between profit and nonprofit owners, Earl Township erroneously attempted to regulate ownership and not merely permissible recreational uses for rurally zoned property. *Ludwig*, 658 A.2d at 839. In essence, Earl Township decided that non-profit entities should be treated differently than profit entities. Specifically, for-profit entities were forbidden from engaging in recreational uses in rural districts that would otherwise be permissible if they were non-profit entities.

■ In promulgating zoning ordinances, ordinance drafters are to provide for uniform uses in respective zoning districts pursuant to Section 605 of MPC, 53 P.S. § 10605, which provides, in pertinent part, as follows: "Where zoning districts are created, all provisions shall be uniform for each class of uses or structures, within each district, except that additional classifications may be made within any district . . ." As the *Ludwig* Court observed:

> Thus, although zoning classifications are, in large part, within the respective legislative body's judgment, *courts may interfere in the rare cases where it is obvious that a classification lacks a substantial relationship to public health, safety, morals or general welfare.*

*Ludwig*, 658 A.2d at 838 (Emphasis added).

This Court concluded that the zoning board was correct when it determined that the profit/non-profit distinction was unrelated to the actual use of the land and did not serve a legitimate zoning purpose. There was no evidence of record to indicate any logical basis for the profit/non-profit ownership distinction.

Keener argues that, although the Rapho Township Zoning Ordinance does not use the words "for-profit" or "non-profit," the

exclusion of banquet facilities operated "on a commercial basis" is an impermissible regulation of land "ownership" just as in *Ludwig.*[10]

## 2.

### *What Does the Zoning Ordinance Mean By "On a Commercial Basis"?*

At the outset, Keener contends that the common pleas court erred when it found that the phrase "on a commercial basis" means when a "fee is charged" for the activity. He contends that merely "charging a fee" is insufficient to qualify as being conducted "on a commercial basis." He points to the list of enumerated uses (skating rinks, bowling alleys, fairgrounds, spas, snack bars, stadiums) all of which would be excluded from the Agricultural Zone right off the bat because they are only viable if carried on for a fee (to cover their costs).

Keener, instead, asserts that "on a commercial basis" means "to carry on *for profit.*" Keener's Brief at 17. By the same token, he considers "a noncommercial basis" to be a reference to activity which is *not* carried out for the purpose of yielding a profit, such as those undertaken by social enterprises, non-profit organizations and government organizations. He contends that when this definition is applied, the zoning restriction implicitly prohibits a "for-profit" landowner (such as himself) from operating the same permitted use as a "non-profit" landowner.

■ Like statutes, the primary objective of interpreting ordinances is to determine the intent of the legislative body that enacted the ordinance. *Adams Outdoor Adver., L.P. v. Zoning Hearing Bd. of Smithfield Twp.,* 909 A.2d 469 (Pa.Cmwlth.

2006), *appeal denied,* 592 Pa. 768, 923 A.2d 1175 (2007). Where the words in an ordinance are free from all ambiguity, the letter of the ordinance may not be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921; *see also* 1 Pa. C.S. § 1903 (words and phrases in a statute shall be construed in accordance with their common and accepted usage). An ambiguity exists when language is subject to two or more reasonable interpretations and not merely because two conflicting interpretations may be suggested. *New Castle County v. Hartford Accident & Indem. Co.,* 970 F.2d 1267 (3d Cir.1992).

■ The Zoning Ordinance does not define "on a commercial basis." However, this Court does not hesitate to reject Keener's interpretation as unreasonable.

In Section 112(A), the Ordinance provides: "Words and phrases shall be presumed to be used in their ordinary context unless such word or phrase is defined differently within this section."

"Commercial" is defined as "occupied with or engaged in commerce ..." Webster's Third New International Dictionary 456 (2002).

"Commercial" is used throughout the Zoning Ordinance consistent with this definition. As previously noted, "Commercial Recreational Facility" equates commercial activity to *"an activity conducted as a business."* Zoning Ordinance, § 112. (Emphasis added). Further, as noted by the common pleas court "[i]n defining park or playground, section 112 of the Ordinance prohibits the operation on a 'commercial' basis with no reference to the identity of the property owner as a for-

---

**10.** Although *Ludwig* is certainly relevant, the case is not quite "on all fours" as Keener suggests. The major difference is that in *Ludwig,* the zoning ordinance only permitted non-profit agencies to do business in rural zoning districts. That case presented a more direct and compelling example of the improper regulation based on ownership. That is not the case here because the Zoning Ordinance is more nebulously written, in terms of "commercial" versus "non-commercial" uses.

profit or not-for-profit entity." Common Pleas Court Opinion, November 27, 2012, n. 5 at 4; R.R. at 86a.

That having been said, this Court agrees with the common pleas court's construction of the Zoning Ordinance that commercial refers to an activity which is carried on as a business, whereas non-commercial refers to the unrestricted open, communal-type use where no fee is charged for the use.

### 3.

### Is there an Illegal Restriction of Land Ownership?

■■■ Applying the conventional meaning of the word "commercial" this Court agrees with the common pleas court's reasoning that the Zoning Ordinance does not illegally restrict land "ownership" because *anyone* is free to operate a banquet facility on a non-commercial basis if they so choose. As the common pleas court noted: "[u]nder the Ordinance, a non-profit entity would also be prohibited from operating a park or playground on a commercial basis in the agricultural zone." Common Pleas Court Opinion, November 27, 2012, at 8; R.R. at 89a. Contrary to Keener's position, commercial activity encompasses a much broader range of uses than only those conducted by profit-seeking entities. Furthermore, this Court does not agree with Keener on a fundamental level that only non-profit entities would be able to operate a carry out non-commercial activities. Non-profit organizations may engage in business or commercial activity and that such activity alone does not indicate that the organization has a for-profit purpose. Take, for instance a YMCA, or a food co-op.

Therefore, the Zoning Ordinance does not, as Keener contends, unlawfully regulate land "ownership" by discriminating between for-profit and non-profit entities.

However, that does not end the inquiry.

### 4.

### Does the Distinction Between Commercial and Non–Commercial Banquet Facilities Bear a Rational Relationship to the Health, Safety and General Welfare of The Community?

Although the zoning restriction does not improperly regulate land ownership, it nevertheless purports to distinguish between two classes of the same use. That is, it distinguishes between a "commercial" banquet facility use and a "non-commercial" banquet facility use within the same zone.

■■■ A restrictive zoning ordinance, such as this, must bear a rational relationship to the health, safety, and general welfare of a community. *Beaver Gasoline Co. v. Zoning Hearing Board*, 445 Pa. 571, 285 A.2d 501 (1971). "[A] law which purports to be an exercise of police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, *and the means which it employs must have a real and substantial relation to the objects sought to be attained.*" *Lutz v. Armour*, 395 Pa. 576, 578–579, 151 A.2d 108, 110 (1959). (Emphasis in original).

In *Mahony v. Township of Hampton*, 539 Pa. 193, 651 A.2d 525 (1994), Hampton Township's Zoning Ordinance permitted the operation of gas wells in residential districts by a municipality or public utility but not by any other type of private entity. It was the position of Hampton Township that there were hazards associated with the operation of gas wells which justified the distinction.

The Supreme Court rejected this argument, noting that all gas well operations, however owned, are regulated uniformly by the Department of Environmental Protection, under the same statutes, and there was no evidence that private operation of a well posed more danger than one operated

by a municipality or public utility. The Supreme Court held that the prohibition of the private operation of gas wells was "arbitrary, and the means are not reasonably related to the ends sought to be attained" and bore "no real and substantial relation to the health, safety and welfare of the community." *Mahony,* 539 Pa. at 198, 651 A.2d at 527–528.

 Applying the same rationale here, there is no evidence of record to indicate any logical basis for the commercial/noncommercial distinction in the Rapho Township Zoning Ordinance.

A banquet facility operated by an owner who charges a fee is the same in all respects as a banquet facility operated by an owner who charges no fee. There is no perceivable difference in the operations or the impacts on the community. As far as use goes, they are identical. It is not as though a noncommercial banquet facility would have less impact on the community than a facility operated on a commercial basis. There simply is no support in the record for that conclusion, and Court cannot envision any such distinction. The distinction, therefore, does not bear any real or substantial relation to the health, safety and welfare of the community and will not be upheld. *Mahony.*

### 5.

***Is there a Valid "Use" Distinction Between Banquet Facilities Available to Those who Pay a Fee and Those Which are Open to the "General Public"***

The Township argues that Section 112 of the Zoning Ordinance provides that, in addition to being operated on a non-commercial basis, Parks and Playgrounds are to be used for recreation purposes by the "general public." It maintains that, notwithstanding the commercial/non-commercial distinction, Keener's proposed use did not meet the definition of "Parks and Play-

grounds" because it would be available only to those who entered into a contract with Keener and paid a fee and not open to the "general public."

The Township, relying on *Rapaport v. Zoning Hearing Board of the City of Allentown,* 687 A.2d 29 (Pa.Cmwlth.1996), reasons that the Zoning Ordinance created a valid use distinction between those facilities open to the "general public" and those open only to those who pay for the privilege of using it.

In *Rapaport,* the zoning hearing board of the City of Allentown approved an application to permit a playground which was part of a daycare business in a zoning district where public parks or playgrounds were permitted. The zoning hearing board concluded that the daycare playground was similar in nature to a public playground. The trial court overturned this decision and found that a private playground was not similar to a public one on the basis that "[t]he essential feature of a public use is that it is not confined to privileged individuals, but is open to the indefinite public. It is this identification or unrestricted quality that gives it its public character." *Rapaport,* 687 A.2d at 31. On appeal, this Court concurred with the trial court's analysis.

 At first glance, *Rapaport* appears to apply. Under the common pleas court's rationale, there are two diverse categories of uses which justify different treatment: one category of banquet facility would available only to members of the public who contract with Keener and pay him a fee; the other would be available to the unrestricted, "general public" who could use the facility at will. However, when determining whether a restriction is valid, courts must look beyond superficial differences to determine if there is a *relevant* difference between the actual natures of the uses to justify different treatment. To

make a legitimate comparison, a deeper analysis of the actions, events, happenings and the type of activities surrounding each use is required. Charging a fee will not always create a genuine distinction in uses. For example, in the case of a fairground operated by a local community and one operated by a private farm owner, the uses are not necessarily different because the county admits one and all for free while the farm owner charges an admission fee. There is simply no justification in that situation to distinguish between the two "uses" for purposes of permitting a fairgrounds use in a zoning district.

 The Township promotes a paradox, on the one hand banquet facilities are permitted in the Agricultural Zone, and on the other hand their use must be free of charge and unrestricted to the indefinite general public. Unlike an open air playground or park, a banquet facility is not conducive to that type of use where unlimited members of the "general public" may walk in and use it. Practically speaking, a banquet facility that charges no fee is still not, in reality, open and accessible to the indefinite public. When in use, the "public" facility would, in actuality, be unavailable to other "uninvited" members of the "general public." Furthermore, regardless of whether a banquet facility is available to the "general public" or available only to those who enter into a contract with Keener and pay a fee, the underlying nature of the use is the same. In both instances, food is served to a limited number of guests. Fee or no fee, the banquet facility will operate the same way.

Accordingly, this Court concludes that it was not reasonable for the common pleas court to find that Keener's proposed use did not meet the definition of "Parks and Playgrounds" under Section 112 because it

was not open to the "general public." To the extent that it is fathomable for a banquet facility to be available to the indefinite general public, the record is silent as to any differences in the underlying nature of the purportedly different uses.

### Conclusion

In sum, this Court declines to recognize commercial/noncommercial distinction as a relevant difference between banquet facilities permitted in the Agricultural Zoning District. The drafters of the Zoning Ordinance specifically permitted banquet facilities as a use in that Zone. The Zoning Ordinance must not be interpreted to exclude banquet facilities that are operated as a business, yet allow only those that are open to the "general public" free of charge, especially because there is no support in the record that such a distinction is reasonable and necessary to protect the health, safety and welfare of the community.

Thus, it was error for the common pleas court to apply that interpretation. The matter must be remanded so the ZHB may reevaluate Keener's application to operate his banquet facility use in the Agricultural Zone without regard to whether he intends to conduct it as a business and charge a fee for the use. When the irrational restrictions are removed, a banquet facility use clearly falls within the definition of "Parks and Playgrounds."

The order of the common pleas court is reversed. The matter is remanded for proceedings which are consistent with this opinion.[11]

### ORDER

AND NOW, this 31st day of July, 2013, the order of the Court of Common Pleas of

---

11. Based on this Court's disposition of the first and second issues, it is unnecessary to address Keener's remaining issues.

Lancaster County is hereby reversed. The matter is remanded for proceedings which are consistent with this Opinion. Jurisdiction is relinquished.