**Tim FINN and John J. Petrush, Appellants**

v.

**ZONING HEARING BOARD OF BEAVER BOROUGH and Borough of Beaver.**

Commonwealth Court of Pennsylvania.

Argued Feb. 1, 2005.

Decided March 8, 2005.

of signposts, even though one occasionally did not display a sign because of the temporary absence of a tenant; and (3) whether a nonconforming use may be restricted to its precise status at the moment it became nonconforming by requiring a permit whenever a new tenant hangs a sign on an existing signpost.

John J. Petrush, Beaver, for appellants.

John L. Walker, Beaver, for appellee, ZHB of Beaver Borough.

William R. Hare, Beaver, for appellee, Borough of Beaver.

BEFORE: SMITH–RIBNER, Judge, LEADBETTER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Tim Finn and John J. Petrush appeal from an order of the Court of Common Pleas of Beaver County that affirmed the order of the Zoning Hearing Board of Beaver Borough (Board) ruling that a second sign on commercial property owned by Mr. Petrush was in violation of the Zoning Ordinance of Beaver Borough and would have to be removed. They question (1) whether an actual and lawful nonconforming use may be found to have been abandoned without proof of both the intent to abandon it and its actual abandonment by the landowner; (2) whether a finding of abandonment is supported by substantial evidence where the undisputed facts show continuous maintenance by the landowner

## I

The subject property is at 348 College Avenue in the Borough, in the C–1 Commercial zoning district, and it contains a two-story frame building. Mr. Petrush purchased it on November 29, 1985, and he has since that time continuously occupied the first floor and used it for his law office. He has leased the second floor to tenants.[1] Since the first tenant occupied the second floor, the building has had two signposts with signs in the front yard, one for Mr. Petrush and one for the tenant. Each is approximately twelve square feet on a separate four-foot-by-four-foot signpost, and Mr. Petrush's sign has been in continuous use. Until August 2000 each new tenant installed a sign on the second signpost when the tenant moved in and removed it when the tenant left. From August 2000 until August 2002, no sign was on the second post. In September 2002, Mr. Finn, also an attorney, installed a sign without first obtaining a permit.

On October 3, 2003 the Zoning Officer notified Mr. Finn that his sign was in violation of Section 401(E)(3)(a) of the Zoning Ordinance, which permits only one freestanding sign per site, and also that it

distinction between unemployment benefits and other statutory payments).

1. The second floor was leased as follows:

December 1985 through December 1990 - J. Lauson Cashdollar, Attorney at Law
January 1991 through June 1991 - Linas V. Ledebur, Jr., Attorney at Law
September 1991 through October 1993 - Donna J. Vohar, Attorney at Law
May 1994 through August 2000 - Thompson Dugan, P.C., Certified Public Accountants
June 2001 through July 2002 - Laser Materials Services, Inc.
August 2002 to the present - Tim Finn, Attorney at Law.

had been erected without obtaining the required permit, and he directed removal. Mr. Finn and Mr. Petrush appealed. At the hearing before the Board Mr. Finn testified to his view that use of the second sign was a valid nonconforming use that was permitted as such and for which no new permit was required. Mr. Petrush noted his wanting two signs to comply with ethical requirements to indicate separation of law practices; further, the term "new sign" does not appear in the ordinance after 1988.

The Board's decision noted that at the time of construction of the signs in January 1986 the installation was in compliance with existing zoning provisions, and it stated that the issue was whether the second sign is a lawful nonconforming pre-existing use. In addition to Section 401(E)(3)(a), the Board quoted other relevant sections of the Zoning Ordinance, including Section 401(D)(4), which provides: "A sign shall be removed within thirty (30) days whenever the circumstances that led to its erection no longer apply or if safety violations occur." Circumstances that dictate removal include: "c. Vacancy or termination of the subject business for more than six (6) months." *Id.* Section 300(A)(2) provides: "It is the intent of this Chapter that any lawful use of a structure or land existing at the effective date of this Chapter may be continued although such use does not conform to the provisions of this Chapter. Such uses may be sold or otherwise transferred to other owners and continued as nonconforming uses." Section 300(E) provides: "Abandonment of Nonconforming Use—If a nonconforming use of a building or land ceases for a period of one (1) year or more, subsequent use of such building

or land shall be in conformity with the provisions of this Chapter."

The Board concluded that immediately prior to Mr. Finn's sign installation in September 2002, a sign had not been displayed on the second signpost for more than one year; therefore the nonconforming use was abandoned under Section 300(E). The leased premises were vacated and the uses there terminated for more than six months between October 1993 and May 1994 and between August 2000 and June 2001; therefore the signs associated with those uses were required to be removed under Section 401(D)(4). After removal, any new sign could be installed only after obtaining a permit consistent with existing ordinance provisions; replacement signs were not "lawful" under Section 300(A)(2) and would not be considered valid nonconforming uses. On appeal the trial court took no additional evidence, and it affirmed.[2]

II

■ Mr. Finn and Mr. Petrush first contend that the Board erred in concluding that a nonconforming use had been abandoned. The Supreme Court in *Pappas v. Zoning Board of Adjustment of City of Philadelphia,* 527 Pa. 149, 152–153, 589 A.2d 675, 676–677 (1991), stated that the owner of property to which a lawful nonconforming use has attached "enjoys a vested property right" and reiterated the holding that "abandonment of a nonconforming use cannot be established by mere proof of a failure for a time to use the property or of a temporary use of the property not inconsistent with an intention to use it for the original purpose. There must be evidence of intention to abandon."

---

**2.** In a zoning appeal where the trial court takes no additional evidence, this Court's review is limited to determining whether the zoning hearing board committed an error of law or an abuse of discretion. *Dudlik v. Upper Moreland Township Zoning Hearing Board,* 840 A.2d 1048 (Pa.Cmwlth.2004).

(Citations omitted.) The burden of proof of abandonment is on the party asserting it, *Pappas,* and abandonment is a question of fact that depends upon all the factors present in the case. *Kuhl v. Zoning Hearing Board of Greene Township,* 52 Pa. Cmwlth. 249, 415 A.2d 954 (1980).

■ Abandonment is proved only when both essential elements are established: (1) intent to abandon and (2) implementation of the intent, i.e., actual abandonment. This Court stated in *Rayel v. Bridgeton Township Zoning Hearing Board,* 98 Pa. Cmwlth. 455, 459, 511 A.2d 933, 935 (1986), that discontinuance of a nonconforming use for a period in excess of that called for in a zoning ordinance creates a presumption of an intent to abandon, and the presumption "can carry the burden of proving intent to abandon if no contrary evidence is presented." However, in addition to proving intent, those opposing "must prove that the use was actually abandoned." *Id.*

■ The Supreme Court stated in *Latrobe Speedway, Inc. v. Zoning Hearing Board of Unity Township,* 553 Pa. 583, 720 A.2d 127 (1998), that failure to use for the specified time under a discontinuance provision is evidence of intent to abandon, which shifts the burden to the party contesting the claim of abandonment, but the introduction of evidence of a contrary intent rebuts the presumption and shifts the burden of persuasion back to the party claiming abandonment. Further: "What is critical is that the intention to abandon is only one element of the burden of proof on the party asserting abandonment. The second element of the burden of proof is actual abandonment of the use for the prescribed period. This is separate from the element of intent." *Id.* at 592, 720 A.2d at 132. This Court has stated that non-use alone will not satisfy a party's burden to prove abandonment, i.e., "[a]ctual abandonment must be demonstrated by other evidence, such as overt acts, a failure to act, or statements." *Latrobe Speedway, Inc. v. Zoning Hearing Board of Unity Township,* 686 A.2d 888, 890 (Pa.Cmwlth. 1996), *aff'd,* 553 Pa. 583, 720 A.2d 127 (1998). Also, an interval between the departure of one lessee and the occupancy of another does not constitute abandonment. *Kuhl.*

In *Grace Building Co., Inc. v. Zoning Hearing Board of City of Allentown,* 38 Pa.Cmwlth. 193, 392 A.2d 892 (1978), the Court reversed a determination of abandonment of a nonconforming use of a property as a social club. The zoning ordinance contained a discontinuance provision similar to that involved in the present case, stating that a nonconforming use that remained unoccupied or unused during any continuous period of twenty-four months should not be occupied except by a use that was in conformity. The issue was whether the nonconforming use had been abandoned either when the last tenant ceased operation or when the property remained unoccupied for two years. The Court restated that intent to abandon may be inferred from the expiration of a designated period, but it is still necessary to show concurrent overt acts or failures to act indicating abandonment. The record showed no evidence of intent to abandon; rather, it showed a continuing and ultimately successful effort to maintain the use as a social club.

The closely related second argument of Mr. Finn and Mr. Petrush is that the Board's determination is not supported by substantial evidence. The Board concluded that "the nonconforming use had been abandoned" because the sign had not been displayed for two years. Although that fact might create a presumption of intent, the presumption was rebutted by Mr. Petush's testimony that he maintained the second signpost in place and available, that

removal of the sign after the tenants left in 2000 was required by the Zoning Ordinance, not a voluntary act indicating intent to abandon, and that he secured another tenant within less than a year.

Their third argument is that the Board erred in concluding that a permit was required to continue the nonconforming use. Section 500(A) of the Zoning Ordinance in paragraph (1) requires a zoning permit before any person may occupy or use land, "[e]rect, rebuild, move, enlarge or structurally alter a building or other structure," "[c]hange the use of land or a structure to a different use," or "[e]xtend or change a nonconforming use." Paragraph (2) expressly states that a zoning permit is not required for "normal maintenance activities, minor repairs, or remodeling or alterations which do not affect the basic structure of an existing building, or increase the lot area coverage, or change the use of the parcel or building." They argue that substitution of one business sign for another upon an existing signpost does not fall under any of the Paragraph (1) categories and does fall under the Paragraph (2) categories. A nonconforming use cannot be limited to precisely the same use as existed when it became nonconforming. *Limley v. Zoning Hearing Board of Port Vue Borough*, 533 Pa. 340, 625 A.2d 54 (1993) (applying doctrine of natural expansion of nonconforming use).

In response the Board (joined by the Borough) disputes that intent to abandon and actual abandonment were not proved. It notes the presumption of intent to abandon based upon the non-use for more than one year (i.e., two years from August 2000 to September 2002), and it asserts that

proof of actual abandonment was shown by removal of the sign by the tenant in August 2000. The Board states that removal of a sign by its owner, lessee of the sign's site, can have the effect of extinguishing the right to rebuild the sign as a nonconforming use, citing *Korngold v. Zoning Board of Adjustment of City of Philadelphia*, 147 Pa.Cmwlth. 93, 606 A.2d 1276 (1992).[3] Also, continuous maintenance of the signpost is not the same as continuous maintenance of the sign, because the definition of sign in Section 601 of the Zoning Ordinance does not include the support structure. Finally, the Board asserts that even if the use was not abandoned under Section 300(E), other provisions require a valid zoning permit. Section 401(A) provides that signs must be erected and maintained only in compliance with the ordinance; Section 401(D)(4)(c) requires removal after a vacancy has continued for six months; Section 500(A) requires a permit before a structure is erected or rebuilt; and Section 601 includes signs in the definition of structure.

■ The Court concludes that the Board erred and abused its discretion in concluding that Mr. Petrush abandoned the lawful nonconforming use of the second sign. The Board concluded that "the nonconforming use had been abandoned under Zoning Ordinance Section 300(E)" because a sign had not been displayed for in excess of one year after Thompson Dugan, P.C. vacated the premises. Mr. Finn and Mr. Petrush correctly assert that this might serve as evidence of intent to abandon, subject to rebuttal, but that such evidence is not sufficient in itself to establish

**3.** In *Korngold* the Court held that where the owner of a large, non-accessory rooftop sign that was a valid nonconforming use dismantled it and removed it after disagreeing with the owner of the building on new lease terms, the issue was not abandonment, which requires proof of intent to relinquish the use voluntarily. Rather, the sign and its support structure were totally destroyed, and the right to reconstruct was extinguished by operation of law and the nonconforming use was extinguished also.

actual abandonment. *Latrobe Speedway, Inc.* The evidence of intent to abandon was rebutted by the testimony of Mr. Petrush that he maintained the second signpost because he intended the sign to be used by future tenants such as Mr. Finn. There was no evidence of actual abandonment introduced, i.e., no evidence of overt acts by Mr. Petrush or of statements or of uses inconsistent with the nonconforming use. In this case the signpost was maintained, not destroyed, which was evidence of intent to continue the nonconforming use. The municipality did not meet its burden to show abandonment so as to overcome the owner's right to continue. *Grace Building Co.*

Because the Board erred in finding abandonment, it also erred in concluding that a permit was required to resume the lawful nonconforming use. The Board's determination that a permit had to be obtained in order for the second sign use to be lawful flowed from its erroneous conclusion that the lawful nonconforming use had been abandoned. The provisions cited by the Board do not independently establish a requirement for a zoning permit before a permitted nonconforming use may be continued. Although Section 601 of the Zoning Ordinance defines "STRUCTURE" as "anything constructed or erected, the use of which requires a fixed location on the ground or an attachment to something having a fixed location on the ground, including in addition to buildings, billboards, ... signs and other building features," it also defines "SIGN" in part as "a name, ... display or illustration which is affixed to ... a building, structure or piece of land," and "SIGN, SELF–SUPPORTING" as "a sign mounted on its own self-supporting structure and constructed on a permanent base."

At argument it was explained that the signpost at issue has two hooks from which the tenant's sign is suspended. Because the ordinance definitions of "sign" distinguish between the sign and the support structure, changing a nonconforming sign on an existing structure (or, as in this case, replacing such a sign after a period of absence when there has been no abandonment) is not erecting or rebuilding a structure or changing the use of a structure or extending or changing a nonconforming use under Section 500(A)(1) of the Zoning Ordinance so as to require a zoning permit. Accordingly, the trial court's order is reversed.

### ORDER

AND. NOW, this 8th day of March, 2005, the order of the Court of Common Pleas of Beaver County affirming the order of the Zoning Hearing Board of Beaver Borough is reversed.