**Drew and Nicola BARNABEI, Appellants,**

v.

**CHADDS FORD TOWNSHIP ZONING HEARING BOARD.**

Commonwealth Court of Pennsylvania.

Argued May 8, 2015.

Decided June 10, 2015.

James J. Byrne and Kelly C. Hayes, Media, for appellants.

Kathryn Luce Labrum, Media, for appellee.

BEFORE: DAN PELLEGRINI, President Judge, P. KEVIN BROBSON, Judge, ANNE E. COVEY, Judge.

OPINION BY Judge P. KEVIN BROBSON.

Drew Barnabei and Nicole[1] Barnabei (collectively, Appellants) appeal from an order of the Court of Common Pleas of Delaware County (trial court), which affirmed the decision of the Chadds Ford Zoning Hearing Board (ZHB). The ZHB denied Appellants' application to use their property as a catered events venue. We now affirm.

Appellants purchased the Stonebridge Mansion (Stonebridge), located at 681 Webb Road, Chadds Ford, Pennsylvania, from 901 Poplar, LP (901 Poplar) in 2011. (Reproduced Record (R.R.) at 38a.) Stonebridge is located in the historic overlay of the R–1 residential zoning district. After their purchase, Appellants moved into Stonebridge with their two children and began to use it as their primary residence. (*Id.* at 84a.)

Appellants later decided to rent out the first and second floors of Stonebridge as a catered events venue. (*Id.* at 120a.) Appellants entered into a contract with Drexelbrook Catering (Drexelbrook), which allows Drexelbrook to exclusively cater any events at Stonebridge.[2] (*Id.* at 313a.) Appellants then sought permission from the former Chadds Ford Township Manager, Joseph Barakat, to hold a music and food festival at Stonebridge. (*Id.* at 137a–38a, 140a.) Mr. Barakat explained that the operation of a catered events venue was not a permitted use for a property in an R–1 district. (*Id.* at 140a–41a.) Mr. Barakat enclosed a zoning application so that Appellants could seek zoning relief, which Appellants did not initially pursue. (*Id.* at 141a.)

On June 5, 2013, Hugh Donaghue, the Chadds Ford Township Solicitor, also in-

---

1. Although the caption in this matter identifies one of the Appellants as "Nicola" Barnabei, it is apparent from the record that her name is "Nicole" Barnabei.

2. The agreement between Appellants and Drexelbrook provides, in relevant part:

 > [*Appellants.*] [Appellants] will provide [Drexelbrook] with facility as mutually agreed upon in terms of [Stonebridge] and all outdoor areas, including but not limited to, Plateau area, bridge, all patios, front and side of mansion, roads and entrance/exits.... [Drexelbrook] will be provided with access to facility during normal business hours and after hours to accommodate potential client tours and booked events. Furthermore [Appellants] will insure all necessary plumbing, electrical, HVAC, potable water and lighting will be in good working order throughout the duration of the contract. Water, gas, electric, phone, internet and waste removal will be paid by [Appellants] based on normal billing cycles. In addition, [Appellants] agree to provide access to parking facilities located on the grounds of the property for use by clients, their guests and sub-contractors, at [Appellants'] designated location. Parking area including lighting, landscaping, snow removal and maintenance will be provided by [Appellants]. All maintenance of facility will be the sole responsibility of [Appellants] unless damage to facility is cause by [Drexelbrook], its authorized agents or guests at its events....
 >
 > *Compensation to [Appellants].* [Drexelbrook] will, for the rights to operate the facility as a special events venue, compensate [Appellants] according to the following schedule....
 >
 > *To [Appellants] from [Drexelbrook].*
 > ● % of food sales generated by [Drexelbrook] on catered events
 > ● % of alcohol and non-alcoholic beverage sales on catered events
 > ● Facility rental fees as charged by [Drexelbrook] at market value which will vary from client to client pending space needed. All rental fees need approval from [Appellants] prior to signing any contract for lease with a potential client....

 (Certified Record (C.R.) Food Serv. Agreement at 2–3.)

formed Appellants that Appellants' proposed use of Stonebridge was not a permitted use in an R–1 district. (Letter from Hugh Donaghue to Appellants (June 5, 2013).) Mr. Donaghue stated that although Appellants were aware of the permitted uses of a residence in an R–1 district, they persisted in operating a "banquet/event facility" at Stonebridge and advertised Stonebridge as "available for weddings and other large gatherings." (*Id.*) Mr. Donaghue indicated that the Township would take legal action to end Appellants' use of the property as a catered events venue. (*Id.*) The township subsequently obtained an injunction to prevent Appellants from holding the proposed music and food festival. (R.R. at 92a.) In addition to the injunction, a township Zoning Officer issued Appellants six non-traffic citations for holding events on April 20, 2013; April 26, 2013; and May 23, 2013.

Seeking to appeal the citations as well as the June 5, 2013, correspondence from Mr. Donaghue, Appellants submitted an "Application for Special Exception, Variance, Interpretation under Zoning Ordinance or Appeal" (Application) to the ZHB. In the Application, Appellants sought to "continue to use [Stonebridge] for weddings and other private events." (C.R. Application at 1.) Appellants further provided:

> [Appellants] appeal the determination of the Township Solicitor and/or zoning officer(s) in that … [Appellants'] use of the property is compliant in all aspects with the Township Zoning Ordinance and Pennsylvania law. [Appellants'] use of the property is a continuation of a

legal non-conforming use. [Appellants'] rental of their private residence to a third party for five hours constitutes as [sic] an accessory use as defined in the Chadds Ford Township Zoning Ordinance.

(*Id.* at 3.) Appellants alternatively requested a variance "to permit private parties to occur at their primary residence." (*Id.* at 4.)

The ZHB conducted several hearings and, ultimately, issued a decision denying Appellants' Application.[3] The ZHB first concluded that Appellants' proposed use of Stonebridge was not permitted by right or as an accessory use. In so doing, it determined that Appellants' commercial use of Stonebridge "precludes a finding of an accessory use in an R–1 district." (R.R. at 410a.) Specifically, the ZHB concluded that the commercial use of the property was not secondary to Appellants' residential use of the property, because Appellants did not use the entire home as a residence. (*Id.*) The ZHB next concluded that Appellants' proposed use of Stonebridge was not a non-conforming use because "there was never a prior legal commercial use of the property." (*Id.* at 412a.) Lastly, the ZHB concluded that Appellants were not entitled to a variance. Specifically, the ZHB determined that Appellants did not establish an unnecessary hardship because there was no evidence "that the property could not be used as a single family residence or a bed and breakfast." (*Id.*) Appellants appealed to the trial court, which took no additional evidence and affirmed the ZHB's decision. Appellants now appeal to this Court.

---

3. In addition to concluding that Appellants' proposed use of Stonebridge was not an accessory use or a nonconforming use and that Appellants were not entitled to a variance, the decision "adopted the Findings of Fact and Conclusions of Law and Discussion submitted on behalf of Chadds Ford Township and which was accepted as the Findings of Fact and Conclusions of Law and Discussion of the [ZHB]." (R.R. at 390a.).

On appeal,[4] Appellants raise several issues. First, Appellants contend that their proposed use of Stonebridge is permitted by right or as an accessory use. Next, Appellants contend that their proposed use of Stonebridge is a continuation of a nonconforming use. Appellants also argue that they are entitled to a variance by estoppel. Finally, Appellants argue that the ZHB erred in denying them a variance.

Appellants first argue that the ZHB erred in determining that Appellants' proposed use of Stonebridge is not permitted by right or as an accessory use under the Chadds Ford Zoning Ordinance (Ordinance). The essence of Appellants' argument is that the ZHB decided not to permit their proposed use of Stonebridge on the basis of an improper profit/non-profit distinction.

Section 135–8 of the Ordinance, pertaining to permitted uses in R–1 districts, provides:

A building may be erected, altered or used and a lot or premises may be used for any of the following purposes and for no other:

A. One-family detached dwelling.

B. Telephone central office.

C. Educational and religious, but in each case only when authorized as a special exception by the [ZHB] and excluding correctional and penal institutions, schools for mental defectives and cemeteries.

D. Agricultural uses, barns, chicken houses, corn cribs and other similar farm outbuildings, provided that no farm be erected within 75 feet of any building used for human occupation, nor within 50 feet of any boundary line of the property unless located at least 200 feet from the road, in which case it shall be located at least 25 feet from the nearest boundary line of the property.

E. The sale of farm products and the erection of a roadside stand for such purposes, provided that such stand is set back at least 20 feet from the official road side line of any public road, and nothing may be there exposed for sale except articles of agriculture raised upon the said premises.

F. Accessory use on the same lot with and customarily incidental to any of the above permitted uses, including a private garage. This shall be understood to include the professional office or studio of a doctor, dentist, teacher, artist, architect, musician, lawyer, magistrate or practitioner of a similar character, or rooms used for home occupations, including dressmaking, millinery, laundry or similar handicrafts; and provided further that no goods are publicly displayed on the premises and no sign or advertisement is shown other than a sign not larger than 12 square feet in area, bearing only the name and occupation (words only) of the practitioner.

G. Bed-and-breakfast establishments.

"Accessory use" is also defined in Section 135–4 of the Ordinance as "[a] use or structure on the same lot with, and of a

4. Our review in land use appeals where the trial court takes no additional evidence is limited to determining whether the zoning hearing board committed an error of law or abused its discretion. *Coal Gas Recovery, L.P. v. Franklin Twp. Zoning Hearing Bd.*, 944 A.2d 832, 837–38 (Pa.Cmwlth.2008).

nature customarily incidental and subordinate to, the principal use or structure." [5]

"A restrictive zoning ordinance ... must bear a rational relationship to the health, safety, and general welfare of a community." *Keener v. Rapho Twp. Zoning Hearing Bd., Lancaster Cnty.*, 79 A.3d 1205, 1215 (Pa.Cmwlth.2013). This Court has held that there is no logical basis for the distinction between commercial and non-commercial uses in an ordinance. *Id.* at 1215–16. In the instant matter, there is no such distinction between commercial and non-commercial uses in the Ordinance.[6] Despite the lack of distinction between commercial and non-commercial uses in the Ordinance, the ZHB argues that the use of Stonebridge as a catered events venue is an impermissible commercial use. This arbitrary distinction not only has no basis in the Ordinance, it also bears no relationship to the health, safety, and general welfare of the community. *Id.* at 1216 (holding that commercial/non-commercial distinction concerning banquet facilities did not "bear any real or substantial relation to the health, safety and welfare of the community"). Stonebridge would have the same effect on the community if the hosted events were non-commercial in nature. Accordingly, we reject the ZHB's argument on this point.

Our analysis, however, does not end there. "The issue of whether a proposed use falls within a given category of permitted use in a zoning ordinance is a question of law, subject to this Court's review." *Caln Nether Co., L.P. v. Bd. of Supervisors of Thornbury Twp.*, 840 A.2d 484, 491 (Pa.Cmwlth.), *appeal denied*, 579 Pa. 694, 856 A.2d 835 (2004). As the owners of Stonebridge, Appellants' primary use of the property is as a residence. Use as a residence is clearly permitted in the Ordinance. Appellants, however, have entered into a contract with Drexelbrook. This contract gives Drexelbrook the right to operate the property as a catered events venue in conjunction with Drexelbrook's catering business. In their application for zoning relief, Appellants essentially seek permission to rent out their property to Drexelbrook. Appellants would be prohibited from operating a catering business out of their home, as the operation of such a business is not an accessory use customarily incidental to use as a residence. Appellants cannot rent out their property and thereby give greater property rights to Drexelbrook than they possess as owners. A lessee's principal use of Stonebridge must be residential in nature.[7] We, therefore, agree with the

---

5. Stonebridge is also subject to a historic overlay to the R–1 district. The historic overlay to an R–1 district provides for the following uses:
 (1) Permitted principal uses.
 (a) Single-family detached dwellings.
 (b) Agricultural uses.
 (c) Recreational uses, and parks.
 (d) Municipal uses.
 (2) Permitted accessory uses.
 (a) Accessory uses on the same lot and customarily incidental to any of the above permitted principal uses, ... and provided further that the sale of farm products shall not be permitted as an accessory use.
 Section 135–136(A)(1)–(2) of the Ordinance.

6. Not only is there no distinction between commercial and non-commercial uses in the Ordinance, the Ordinance specifically provides for some commercial uses in R–1 districts, such as bed and breakfast establishments.

7. In their brief, Appellants do not contend that Stonebridge will be rented out for use as a residence, or even for overnight accommodation of guests. Rather, Appellants "propose[] to occasionally rent out the first floor of the mansion for events ranging from smaller family gatherings such as First Holy Communion parties, bridal showers and rehearsal dinners, to fundraisers, corporate events and weddings." (Appellants' Br. at 5.)

ZHB that Appellants' proposed use of Stonebridge is not a permitted use under the Ordinance.[8]

■ Appellants next argue that the ZHB erred in concluding that the use of Stonebridge as a catered event venue is not a nonconforming use. In essence, Appellants contend that because 901 Poplar held similar events at Stonebridge during the course of its ownership, Appellants have established a nonconforming use.

■ "A lawful, nonconforming use of a property is a use predating a subsequent prohibitory zoning restriction." *Pietropaolo v. Zoning Hearing Bd. of Lower Merion Twp.*, 979 A.2d 969, 976 (Pa. Cmwlth.2009). "The right to maintain a nonconforming use is only available for uses that were lawful when they came into existence and *which existed when the ordinance took effect.*" *Id.* (emphasis added); *see also* Section 135-166 of the Ordinance ("The lawful use of a building or premises existing at the time this chapter becomes effective may be continued although such use does not conform with the provisions of this chapter.") The property owner has the burden to prove the existence of a nonconforming use, which requires "conclusive proof by way of objective evidence of the precise extent, nature, time of creation and continuation of the alleged nonconforming use." *Jones v. North Huntingdon Twp. Zoning Hearing Bd.*, 78 Pa. Cmwlth. 505, 467 A.2d 1206, 1207 (1983).

Appellants presented no evidence that Stonebridge was used as a catered events venue prior to the enactment of the Ordinance. The only evidence presented as to Stonebridge's use prior to the enactment of the Ordinance indicated that Stonebridge was used as a residence from the time it was built in 1922. In 1952, Stonebridge was zoned R-1. Evidence that, after the enactment of the Ordinance, the previous owners held events at Stonebridge is insufficient to support the existence of a nonconforming use. The use, in this case a catering business, must have been in existence *before* the Ordinance was enacted. Accordingly, we reject Appellants' argument concerning nonconforming use.

■ Appellants next argue that they are entitled to a variance by estoppel. The ZHB counters that Appellants have waived their argument concerning a variance by estoppel by not raising it before the ZHB. We agree that Appellants' argument has been waived. "If parties do not request that the trial court hear additional evidence, they waive arguments which were not raised before the [ZHB]." *Soc'y Created to Reduce Urban Blight v. Zoning Bd. of Adjustment*, 804 A.2d 116, 119 (Pa. Cmwlth.), *appeal denied*, 572 Pa. 727, 814 A.2d 679 (2002), *cert. denied*, 539 U.S. 903, 123 S.Ct. 2247, 156 L.Ed.2d 111 (2003). "This approach ensures that the fact finder has a full opportunity to create a reviewable record on all issues." *Id.* Here, the trial court did not hear additional evidence and Appellants did not raise the issue concerning a variance by estoppel before the ZHB. Rather, the ZHB considered whether Appellants' proposed use of Stonebridge

---

"These short term rentals would last for approximately five (5) hours." (*Id.*).

**8.** Our analysis here is confined to the facts presented. We acknowledge that opening one's home for events (*i.e.*, weddings, birthdays, fundraisers, etc.) is consistent and thus customarily incidental to a residential use. The key, however, is that the event is accessory to a *residential* use. Our analysis in this case might be different if (a) Appellants proposed to hold parties and events at Stonebridge incidental to their residential use; or (b) if Appellants leased Stonebridge to another for use as a residence and, in turn, the tenant chose to hold a party or event at Stonebridge incidental to the tenant's residential use of the property.

was permitted by right, as an accessory use, as a nonconforming use, and whether it should grant Appellants a variance. (R.R. at 11a, 384a–89a, 410a–11a, 420a, 422a.) The issue concerning a variance by estoppel was not raised until the parties were before the trial court. Appellants' argument concerning their entitlement to a variance by estoppel is waived.

 Appellants next argue that the ZHB erred in concluding that they were not entitled to a variance. "A variance should be granted in exceptional cases only and, therefore, the landowner's burden of proof is heavy." *Williams v. Salem Twp.*, 92 Pa.Cmwlth. 634, 500 A.2d 933, 936–37 (1985), *appeal denied*, 516 Pa. 615, 531 A.2d 781 (1987). The Ordinance provides that in the event that the Ordinance imposes an unnecessary hardship upon a landowner, the ZHB may grant a variance when the following findings are made:

(a) That there are unique physical circumstances or conditions, including irregularity, narrowness or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions, and not the circumstances or conditions generally created by the provisions of this chapter in the neighborhood or district in which the property is located;

(b) That, because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of this chapter and that the authorization of a variance is therefore necessary to enable the reasonable use of the property;

(c) That such unnecessary hardship has not been created by the applicant;

(d) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

(e) That the variance, if authorized, will represent the minimum variance that will afford relief, and will represent the least modification possible of the regulation or ordinance in issue.

Section 135–175(B)(1) of the Ordinance. This Court has held that in order to establish an unnecessary hardship, "an applicant must prove that either: (1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) the property can be conformed for a permitted use only at a prohibitive expense; or (3) the property is valueless for any purpose permitted by the zoning ordinance." *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 812 (Pa. Cmwlth.), *appeal denied*, 585 Pa. 692, 887 A.2d 1243 (2005). "Mere evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance." *Id.*

Here, Appellants failed to establish an unnecessary hardship. The ZHB concluded that there were no unique physical features of the property that would prevent Stonebridge from being used as a residence. (R.R. at 393a.) Appellants are, in fact, using Stonebridge as a residence. Further, Stonebridge does not need to be conformed for a permitted use, as it is already being used as a residence. Lastly, Stonebridge is not valueless for any purpose permitted by the zoning ordinance. It is being used as a residence and has

value as such. The fact that the use of Stonebridge as a residence is less financially rewarding than using it as a catered events venue does not justify a variance. We, therefore, reject Appellants' argument that they were entitled to a variance.

Accordingly, we affirm the trial court's order.

**ORDER**

AND NOW, this 10th day of June, 2015, the order of the Court of Common Pleas of Delaware County is hereby AFFIRMED.