TRDS 441 Hector Associates, LP, :
                Appellant :
                      :
          v. :
                      :
Conshohocken Zoning Hearing : No. 1316 C.D. 2022
Board : Argued: June 5, 2023

BEFORE:    HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                              FILED: July 3, 2023

         TRDS 441 Hector Associates, LP (Appellant) appeals from the Montgomery County Common Pleas Court's (trial court) October 17, 2022 order denying its appeal from the Conshohocken Borough (Borough) Zoning Hearing Board's (ZHB) October 18, 2021 order (ZHB Order) that granted property owner Jeronimos LLC (Jeronimos) a special exception for real property located at 424 East Elm Street in the Borough (Property). Appellant presents four issues for this Court's review: (1) whether the trial court erred by finding that the ZHB properly permitted Jeronimos to amend the proposed purchaser's special exception application (Application) to add itself as a co-applicant or substitute applicant, rather than concluding that a new application had been submitted; (2) whether the trial court erred by concluding that Appellant waived the issues related to the ZHB's decision permitting the Application's amendment; (3) whether the ZHB[1] erred by finding that

---

[1] Appellant's issues refer to whether the trial court erred; "[o]ur standard of review, however, pertains to whether the [ZHB], not the trial court, erred or abused its discretion." *In re Brickstone Realty Corp.*, 789 A.2d 333, 338 n.2 (Pa. Cmwlth. 2001).

the Application was timely filed; and (4) whether the ZHB erred by finding that Jeronimos met its burden of proving that the new nonconforming use was no more detrimental than the existing nonconforming use. After review, this Court affirms.

Fiona Jamison (Jamison) owns Jeronimos, a real estate holding company that owns the Property. The Property, which Jeronimos acquired in 2007, and is located in the Borough's BR-2 residential zoning district, is improved with a two-story building containing approximately 4,000 square feet per story. The Property has 18 on-site parking spaces and, through an easement, exclusively uses 3 spaces on Appellant's Property and has access to an additional 29 spaces on Appellant's Property (Easement) (collectively, Parking Area). Appellant owns the adjacent property at 441 East Hector Street (Appellant's Property) that is burdened by the Easement. In 2005, the ZHB had granted the Property's former owner a special exception under the Borough of Conshohocken Zoning Ordinance (Borough Code)[2] to change the then-existing nonconforming contractor office and warehouse on the first floor to a nonconforming fitness/wellness center and related offices. Following Jeronimos' purchase of the Property, the first floor remained a wellness center and yoga studio, and Jamison used the second floor to operate her own employee research company.

On June 24, 2021, S.K. Elm LLC (SK Elm) filed the Application with the ZHB, identifying itself as the Property's equitable owner. The Application proposed no change to the second-floor office space, but requested a special exception to change the nonconforming wellness center/yoga studio on the first floor to a mix of warehouse/storage, equipment service/maintenance, and related support and office space. The ZHB held a hearing on July 19, 2021, during which Appellant appeared, obtained party status, and requested a continuance so it could review the

---

[2] Borough of Conshohocken, Pa., Borough Code 6-2001, *as amended*, §§ 27-101 - 27-2211 (2001).

Application further.  Jamison was also granted party status at the July ZHB Hearing. *See* Reproduced Record (R.R.) at 27a-28a.  The ZHB continued the hearing until August 16, 2021.

In the interim, SK Elm withdrew from its proposed Property sales agreement with Jeronimos.  At the August 16, 2021 hearing (August ZHB Hearing), at Jeronimos' request, the ZHB agreed to amend the Application to substitute Jeronimos as the applicant.  Jamison and traffic engineer, Frank Tavani (Tavani), testified on Jeronimos' behalf.  Michael Barrist (Barrist), Appellant's owner, and Anthony Rufo (Rufo), a tenant at Appellant's Property and former owner of both the Property and Appellant's Property, testified on Appellant's behalf.  At the August ZHB Hearing's conclusion, the ZHB continued the matter to September 13, 2021 (September ZHB Hearing), to permit the parties to submit proposed findings of fact and conclusions of law.  At the September ZHB Hearing, the matter was adjourned until October 18, 2021 (October ZHB Hearing).

At the October ZHB Hearing, the parties presented their closing arguments.  Thereafter, the ZHB voted to approve the Application.  Appellant filed a timely appeal to the trial court, and Jeronimos and Jamison intervened.  The ZHB issued its written decision on December 2, 2021, from which Appellant filed a supplemental notice of appeal.  On October 17, 2022, the trial court denied Appellant's appeal.  Appellant appealed to this Court.[3, 4]

---

[3] "Where, as here, the trial court takes no additional evidence, our scope of review is limited to determining whether the [ZHB] committed an abuse of discretion or an error of law." *PAJ Ventures, LP v. Zoning Hearing Bd. of Moore Twp.*, 225 A.3d 891, 896 n.2 (Pa. Cmwlth. 2020).

[4] On February 1, 2023, Jeronimos sold the Property to OPS Realty Holding, LLC (OPS). On February 3, 2023, OPS filed a motion to substitute itself for Jeronimos and Jamison.  On February 9, 2023, this Court granted the motion and ordered that OPS be substituted for Jeronimo and Jamison as a party in this appeal.  This Court herein references Appellee applicant as Jeronimos for clarity.

This Court first addresses Appellant's contention that the trial court erred by holding that Appellant waived any objection to the ZHB's decision to substitute Jeronimos as applicant, because Appellant failed to timely raise the issue. Appellant argues that Jeronimos' request to be added as a co-applicant effectively constituted the Application's withdrawal and the submission of a new application (Jeronimos' Application). Appellant asserts that it objected "at the appropriate time when it was 'apparent' that Jeronimos intended for [] Jeronimos['] Application to be considered as an amendment or as Jeronimos having filed the same as a co-applicant with SK Elm for the purposes of circumventing Borough Code requirements." Appellant Br. at 27. Appellant argues that

> [i]t was during [the closing arguments stage at the October ZHB Hearing] where Jeronimos'[] counsel first clarified that [] Jeronimos['] Application was piggybacking on the procedural measures complied with under the SK Elm Application. [*See*] R[.]R[. at] 166a at 15-19 (where, contrary to mixed office warehouse use proposed in the [] Application, counsel clarifies that Jeronimos intends to use the space for its own office use).

*Id*. at 28. Jeronimos retorts that the trial court properly held that Appellant's failure to timely raise the issue resulted in waiver.

> This Court has explained:

> "If parties do not request that the trial court hear additional evidence, they waive arguments which were not raised before the [ZHB]." *Soc'y Created to Reduce Urban Blight v. Zoning Bd. of Adjustment*, 804 A.2d 116, 119 (Pa. Cmwlth. [2002]). . . . "This approach ensures that the fact[-]finder has a full opportunity to create a reviewable record on all issues." *Id*.

*Barnabei v. Chadds Ford Twp. Zoning Hearing Bd.*, 118 A.3d 17, 23 (Pa. Cmwlth. 2015); *see also* Section 753(a) of the Local Agency Law, 2 Pa.C.S. § 753(a) ("[I]f a full and complete record of the proceedings before the [local] agency was made[,]

4

such party may not raise upon appeal any . . . question not raised before the agency . . . unless allowed by the [trial] court upon due cause shown.").

Further, the law is well established that "a party has a duty to preserve an issue at every stage of a proceeding . . . [and] also must comply with the general rule to raise an issue **at the earliest opportunity**." *Campbell v. Dep't of Transp., Bureau of Driver Licensing*, 86 A.3d 344, 349 (Pa. Cmwlth. 2014) (emphasis added). "**Issues not raised at the <u>earliest possible time during a proceeding</u> are waived**." *City of Phila. v. DY Props., LLC*, 223 A.3d 717, 723 (Pa. Cmwlth. 2019) (bold and underline emphasis added) (quoting *Grever v. Unemployment Comp. Bd. of Rev.*, 989 A.2d 400, 402 (Pa. Cmwlth. 2010));[5] *see also Liberties Lofts LLC v. Zoning Bd. of Adjustment*, 182 A.3d 513 (Pa. Cmwlth. 2018) (where additional evidence was not offered to the trial court, the trial court properly found an issue waived because it was not raised before the zoning hearing board, was not raised in the party's initial brief to the trial court, and was first raised by the party in oral argument to the trial court).

At the August ZHB Hearing, Jeronimos' counsel sought permission to amend the Application for Jeronimos to be a co-applicant because SK Elm had withdrawn from the proposed agreement to purchase the Property:

> [Jeronimos' Counsel]: . . . . I made an application on behalf of SK Elm[] . . . .
>
> When we filed the [A]pplication, [] Jamison, who is the sole member of [sic] the owner of the [P]roperty, entered her appearance on her behalf, on behalf of the owner. So[,] I wrote to -- I've spoken with [] Jamison since that time, and I wrote to [ZHB Chairman Richard D.] Barton [(ZHB Chairman Barton)] **entering my appearance on behalf of the owner**, **Jeronimos**[]. [It has] standing under the

---

[5] *Grever* was superseded on other grounds by Pa.R.A.P. 1513(d), as recognized in *Morgan v. Unemployment Comp. Bd. of Rev.*, 108 A.3d 181 (Pa. Cmwlth. 2015).

[Pennsylvania Municipalities Planning Code,[6]] and **I would ask that the [A]pplication be amended to reflect Jeronimos as a co-app[licant]**.

[Borough Solicitor]: And Jeronimos . . . was listed as the owner of record on the zoning hearing notice that was sent out and mailed out.

[Jeronimos' Counsel]: Yes.

[Borough Solicitor]: And[] [Jeronimos' Counsel], to clarify, has any of the zoning relief changed at all?

[Jeronimos' Counsel]: No, it's the same exact request. There is [sic] -- the [P]roperty is nonconforming, and the [A]pplication is to change the first[-]floor use from a wellness/yoga center to [sic] office, which was the use back in 2005. I think [ZHB Chairman] Barton referenced in one of the exhibits in the record is that prior special exception.

[Borough Solicitor]: And, [ZHB Chairman Barton], hearing that and reviewing documents, **I would feel comfortable proceeding with the applicant now being Jeronimos [], rather than SK Elm []**.

[ZHB Chairman Barton]: **I will agree**[,] **and we should proceed**.[7]

R.R. at 55a-56a (emphasis added).

Appellant made no objection in response to Jeronimos' request or the ZHB's granting of the request at any time during the August ZHB Hearing, notwithstanding that Appellant was permitted to and, in fact did, present witnesses and evidence opposing the Application. Nor did Appellant's counsel object to any evidence Jeronimos offered. Notwithstanding that Appellant contends it was unclear

---

[6] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

[7] Notwithstanding this exchange wherein the ZHB agreed to "proceed[] with the applicant now being Jeronimos [], rather than SK Elm [][,]" R.R. at 56a, in its decision, the ZHB stated: "The Application was originally submitted by . . . SK Elm []. Thereafter, SK E[lm] [] withdrew as the [a]pplicant and the owner of the [Property], Jeronimos [] became the sole applicant for relief." R.R. at 14a.

6

until closing arguments at the October ZHB Hearing that Jeronimos effectively sought to substitute itself for SK Elm as the applicant, Appellant's counsel did not object to the Application when Jamison testified at the August ZHB Hearing that SK Elm had "pulled out" as a proposed buyer of the Property and the ZHB substituted Jeronimos for SK Elm as the applicant. R.R. at 81a. Rather, Appellant's counsel presented *substantive* objections to the Application, but made no objection as to who was the applicant. At the August ZHB Hearing's conclusion, the matter was continued to the September ZHB Hearing.

At the September ZHB Hearing, the matter was adjourned until October 18, 2021, because only four ZHB members could attend. Although present at the September ZHB Hearing, Appellant's counsel did not raise any objection to the Application's amendment or any previously admitted evidence.

At the October ZHB Hearing, the parties made closing arguments. The closest Appellant's counsel came to raising an issue about the Application came at the end of his argument, when he stated:

> And, last, but certainly not least, the fact that there was this new application submitted in August, August 16th of this year, with virtually no details as to what the actual new nonconforming use was supposed to be, no application, no drawings, no business details, no descriptions, virtually the polar opposite of the initial [A]pplication that was filed in June by SK Elm before that was abandoned, it unnecessarily puts the burden on the [ZHB] to try to make an evaluation as to whether this would violate the 2006 [E]asement or the [B]orough [C]ode restricting the definition required to meet the criteria for a special exception.

R.R. at 169a. Notably, Appellant's counsel **did not object to the amendment**, **did not suggest the Application was untimely**, **and did not raise any other procedural objection**. However, without any foundation, Appellant's counsel

7

appears to assert that the Application was withdrawn and no application or a new, purportedly incomplete application, was filed.

> The trial court explained:

> > [A]ppellant waived any challenge to the ZHB's decision to permit amendment of the [A]pplication to install Jeronimos as a co-applicant. As the ZHB noted in its brief, [A]ppellant did not object at the August [ZHB H]earing when the amendment was requested and approved. [The trial] court's review of the record did not reveal a timely objection. Indeed, [A]ppellant does not appear to assert in [its] brief or reply brief filed in this [trial] court that it raised a timely objection to Jeronimos becoming a co-applicant. As such, [A]ppellant did not properly preserve this claim for [the trial] court's review[,] and it should not be heard now on further appeal to challenge the ZHB's decision to permit Jeronimos to pursue the original [A]pplication as a co-applicant. *See Segal v. Zoning Hearing B[d.] of Buckingham Twp.*, 771 A.2d 90, 94 (Pa. Cmwlth. 2001) (argument not raised before [the zoning hearing] board is waived on appeal).

Trial Ct. Op. at 5, R.R. at 358a (citation and footnote omitted).[8] This Court agrees with the trial court's reasoning.

Appellant had more than adequate notice at the August ZHB Hearing that Jeronimos was requesting to be a co-applicant, and that SK Elm had withdrawn from the Property's proposed agreement of sale. Nonetheless, Appellant did not object to the Application's amendment at the August ZHB Hearing, the September ZHB Hearing, or the October ZHB Hearing, and it did not raise the argument that the Application had been withdrawn and no application or a separate Jeronimos' Application had been filed until Appellant concluded its closing arguments. Accordingly, Appellant waived any objection to the Application's amendment.

---

[8] In a footnote, the trial court acknowledged that "[t]he return of record filed with the [trial] court appears to be missing pages six and seven from the transcript of the [October ZHB Hearing], during which counsel for the parties were making closing arguments." Trial Ct. Op. at 5 n.4, R.R. at 358a n.4.

Appellant next asserts that the trial court erred by concluding that the ZHB correctly determined that the Application was timely filed within one year of when the nonconforming yoga studio use was discontinued. Claiming that the amendment effectuated the Application's withdrawal and the new Jeronimos' Application's submission, Appellant contends that the Jeronimos' Application was not filed within one year of the discontinuance of the nonconforming yoga studio use. Specifically, Appellant argues:

> [On August 16, 2021,] Jeronimo[s] submitted the Jeronimo[s'] Application that, based on Jeronimos'[] testimony, substantively deviated from the [] Application filed in June 202[1]. The record is clear that Jeronimos was not the applicant under the [] Application filed on or about June 21, 2021. R[.]R[. at] 178a (where applicant is listed as SK Elm [] c/o Martin Klagholz). Moreover, the [trial] [c]ourt's determination that the Property was not vacant in July of 2020[,] is not supported by any testimony or evidence in the record.

Appellant Br. at 35. Because Appellant waived its argument that the Application is a separate Jeronimos' Application filed on August 16, 2021, this Court shall only consider whether the Application was timely filed on June 18, 2021. *See* R.R. at 178a.

> Section 27-703(c) of the Borough Code states:

> A nonconforming use, when discontinued, may be resumed any time **within one year from such discontinuance**,[9] but not thereafter, unless a variance is

---

[9] Appellant argues that "discontinuance" is a "less rigorous standard" than abandonment, Appellant Br. at 37, and that "[t]he Borough Code . . . does not require proving an 'intent to discontinue' but, rather, just a discontinued use." Appellant Br. at 37. The Borough Code defines "[d]iscontinuance" as

> [t]he termination of both a) the use or activity at the property which had previously been permitted under this Chapter be it by variance, special exception or as a nonconforming use and b) **the intent to continue such discontinued use or activity**. **A use or activity**

9

granted by the [ZHB] in accordance with Part 6 of this Chapter. The resumption may be of the same use, or **another nonconforming use which is equally appropriate** or more appropriate to the district in which it is located, **but shall not be less appropriate or more detrimental than the previous nonconforming use**.

R.R. at 7a (emphasis added).

"The burden of proving that a nonconforming use has been abandoned is on the party so asserting. Therefore, here, [Appellant] had the burden of demonstrating abandonment. In order to demonstrate abandonment, a party must show both (1) an intent to abandon, and (2) actual abandonment." *PAJ Ventures, LP v. Zoning Hearing Bd. of Moore Twp.*, 225 A.3d 891, 898 (Pa. Cmwlth. 2020) (citation omitted).

The *PAJ Ventures* Court explained:

> Where . . . **an abandonment provision is provided in the ordinance**, such a provision "**creates a presumption of the intent to abandon the use by the expiration of the designated time**." *Latrobe Speedway* [*v. Zoning Hearing Bd. of Unity Twp.*], 720 A.2d [127,] 132 [(Pa. 1998)]. Thus, "[a]bsent any evidence to the contrary, the lapse of the designated time will be sufficient to establish an intent to abandon the use." *Id*. **Failure to use a property for a designated time provided under an abandonment provision creates a presumption of an intent to abandon**, with respect to *that* element, which shifts the

_____

**shall not be considered discontinued if there is evidence of the intent on the part of the owner or operator of such use or activity to continue the said activity or use**. Such evidence may include but is not limited to active attempts to sell or market the use or activity, the maintenance of any and all required permits and licenses for said use or activity, and conformance with all applicable codes and property maintenance ordinances.

Borough Code § 27-202 (emphasis added); https://ecode360.com/14317207 (last visited June 30, 2023). Further, this Court has held: "As applied to nonconforming uses under zoning law, the word 'discontinued' must be read as the equivalent of 'abandoned[.]'"[] *Metzger v. Bensalem Twp. Zoning Hearing Bd.*, 645 A.2d 369, 370 (Pa. Cmwlth. 1994). Accordingly, Appellant's argument lacks merit.

10

burden to the party contesting the claim of abandonment. *Latrobe Speedway*, 720 A.2d at 132; *Finn v. Zoning Hearing B*[*d.*] *of Beaver Borough*, 869 A.2d 1124, 1127 (Pa. Cmwlth. 2005). Yet, if evidence of a contrary intent is introduced, the presumption is rebutted[,] and the burden shifts back to the party claiming abandonment. *Latrobe Speedway*, 720 A.2d at 132.

However, it bears emphasizing that failure to use a property for the designated time in the ordinance only creates **a rebuttable presumption with respect to the first of the two abandonment elements**; **the party asserting abandonment must still satisfy the second element before the burden shifts to the landowner**. *See Finn*, 869 A.2d at 1127; *Zitelli v. Zoning Hearing B*[*d.*] *of Borough of Munhall*, 850 A.2d 769, 772 (Pa. Cmwlth. 2004). "What is critical is that the intention to abandon is only one element of the burden of proof on the party asserting abandonment. The second element of the burden of proof is actual abandonment of the use for the prescribed period. This is separate from the element of intent." *Latrobe Speedway*, 720 A.2d at 132. Actual abandonment of a nonconforming use "cannot be 'inferred from or established by a period of nonuse alone. It must be shown by the owner['s] . . . overt acts or failure to act.'" *Zitelli*, 850 A.2d at 772 (quoting *Est*[*.*] *of Barbagallo v. Zoning Hearing B*[*d.*] *of Ingram Borough*, . . . 574 A.2d 1171, 1173 ([Pa. Cmwlth.] 1990)). However, **courts typically will not find actual abandonment when a use is temporarily discontinued for reasons beyond the landowner's control**, **such as a financial inability of the owner to carry on due to general economic depression**.

*PAJ Ventures*, 225 A.3d at 898-99 (bold emphasis added).

Jamison testified regarding the yoga studio use's cessation:

Q. Okay. And the yoga studio, you indicated, operates seven days a week; is that right?

A. They did. I don't know if they still do, but they're out.

Q. And the yoga studio leased the space directly from you?

A. That's correct.

11

Q. And you were familiar with the terms of the lease?

A. Yes.

Q. Okay. And when did the yoga studio vacate the space?

A. It was the end of June.

Q. End of June of?

A. 2020.

Q. 2020. Okay. So[,] the lease ended in June, at the end of June of 2020. Do you know when the classes at the yoga studio stopped?

A. Yeah. I mean, once -- their lease didn't end. I mean, they exited. Their lease was for another three years[,] and they broke the lease.

Q. And why did they break the lease?

A. Because they could no longer operate because of C[OVID-19]. They couldn't -- due to the restrictions, based on you had to be six feet apart, they needed -- they couldn't fit enough people in a room to generate enough income to pay the rent.

Q. Okay.

A. They needed that occupancy of 30 people in a room to generate the revenue in order to cover the rent, so with the new rules they couldn't. Does that make sense?

Q. Yes. So, effectively, they were unable to bring enough people into the classes to support -- to sustain the rent. Is that --

A. That's correct.

Q . -- an accurate statement?

A. Yes.

R.R. at 75a-76a.

12

Appellant argues:

> The cumulative testimony indicates that the prior nonconforming use was discontinued sometime after February of 2020, but not later than June of 2020. Jeronimo[s] did not present any witnesses, evidence, or testimony from the Property's prior tenant, the yoga studio, pertaining to when its nonconforming use was discontinued.[10] [] Jamison testified that the yoga studio ended its lease early because nobody was going to the studio. [] Barrist testified that he did not see anybody attending classes after the first or second quarter of 2020. [] Rufo testified that he did not see anybody attending classes after February of 2020.

Appellant Br. at 38.

"It is well[ ]settled that the [zoning hearing board] is the sole arbiter of witness credibility and evidentiary weight. A zoning hearing board is free to reject even uncontradicted testimony that it finds lacking in credibility, including testimony of an expert witness." *Pham v. Upper Merion Twp. Zoning Hearing Bd.*, 113 A.3d 879, 893 n.9 (Pa. Cmwlth. 2015) (citation omitted). The ZHB, as fact-finder, determined that "the yoga studio was in operation . . . up until the last week of June 2020[,]" R.R. at 16a, and that "[t]he space that the yoga studio occupied has been empty since July 2020." R.R. at 17a. Jamison's testimony alone was substantial evidence for the ZHB's conclusion that the nonconforming use was not abandoned. No presumption of an intent to abandon arose because less than one year passed between the end of June 2020 and the June 18, 2021 Application date. Further, the assertion that classes may have ceased prior to the end of June when the space was vacated does not satisfy the actual abandonment requirement given Jamison's testimony that the yoga studio use was "discontinued for reasons beyond

---

[10] Importantly, it was **not** Jeronimos' burden to present evidence to show that the nonconforming use was **not** abandoned. Instead, it was Appellant's burden to prove the nonconforming use **was** abandoned. *See PAJ Ventures*.

13

the [lessee's] control, [resulting from the] financial inability of the [lessee] to carry on due to [the COVID-19 pandemic restrictions]." *PAJ Ventures*, 225 A.3d at 899. Thus, the ZHB did not err by concluding that the nonconforming use had not been abandoned.

Appellant also contends that the ZHB erred by finding that Jeronimos satisfied its burden to prove that the proposed nonconforming use was no more detrimental than the prior nonconforming use. With respect to this burden, Appellant first claims that the record is "devoid of any [z]oning [a]pplication detailing the proposed use such that the ZHB would have a legitimate basis upon which to determine the proposed nonconforming use would be no more detrimental than the prior nonconforming use. A complete [z]oning [a]pplication would be necessary to perform such an inquiry." Appellant Br. at 40. Appellant appears to imply that because, in its view, the Application detailing such was withdrawn, and the purported Jeronimos' Application lacked such detail, it was inadequate. Because Appellant waived the challenge to the Application's amendment, this Court considers the Application as amended. Further, Jeronimos provided Jamison's and Tavani's testimony in support of the Application. Accordingly, Appellant's assertion is meritless.

In its decision, the ZHB recounted Jamison's testimony wherein she explained that there are 18 on-site parking spaces at the Property. Jamison stated that the Easement allows her to use 3 parking spaces exclusively on Appellant's Property and 29 parking spaces on Appellant's parking lots. Jamison's neighbors use the parking spaces on the Property after 6:00 p.m. and up until 8:00 a.m. in the morning, pursuant to an easement on the Property. Jamison recounted that there were at least five or six classes at the yoga studio on a typical workday, held in the early morning, during lunch hour, and after work hours. She described the yoga studio as containing two 30-person-capacity yoga rooms on the first floor, along with

14

office space, a kitchen, and a reception area. Every hour on the hour there were between 20 or 30 people entering and exiting classes. Due to COVID-19 restrictions, the yoga studio was not able to operate because it could not hold 30 people 6 feet apart and, thus, could not generate the revenue necessary to sustain the rent. Before the COVID-19 pandemic, the parking lot would be full.

Jamison observed that, although the office was the same size space as the yoga studio, the yoga studio had a greater intensity of use than the proposed office use, which would have a maximum of 10 to 12 people coming and going. Jeronimos is an employee research company that performs large scale, online employee surveys for employers. The research does not involve anyone coming on-site. Further, half of Jeronimos' employees work remotely, so there would be fewer than 12 total employees on the first and second floors. Jeronimos receives deliveries once a week or less.

The ZHB summarized Tavani's testimony that, in the one-hour period from around 5:45 to 6:45,[11] there could be as many as 80 people coming from and going to the yoga studio and it would not be at full capacity. With respect to office space, Tavani testified that the equation for peak hour is about 1.5 trips for every 1,000 square feet of office space. Tavani explained that, although the Institute of Transportation Engineers' (ITE) data suggests 4,000 square feet would only generate 5 peak hour trips,[12] when that estimate is doubled, it would still provide for a tremendous reduction in how much traffic the office use generated at the site. According to the ITE *Parking Generation Manual*, an office generates a peak parking demand of about 2.4 spaces per thousand square feet. Tavani estimated that the first and second floors would each generate about 10 spaces of parking demand. He further stated that the parking demand the yoga studio generated was likely

---

[11] It is not apparent from the record whether the time references are a.m. or p.m.
[12] Tavani stated that a trip refers to an individual entering or exiting the Property.

significantly higher than the office use. Tavani expounded that his data was based on data that has been consolidated from various regions across the country for an office use. He asserted that local and empirical data was likely comparable to national data in terms of usefulness.

As fact-finder, the ZHB was empowered to evaluate Jamison's and Tavani's credibility and to weigh their testimony. Based on this evidence, the ZHB concluded that the proposed office use is equally appropriate or more appropriate than the use as a yoga studio, and that the proposed office use is not more detrimental than the existing nonconforming use.

Appellant argues:

> The [trial] [c]ourt [and the ZHB] erred in accepting as fact the opinions of Jeronimos'[] expert, [] Tavani, in the absence of substantial evidence in support of such opinions. [] Tavani did not have <u>any</u> firsthand knowledge upon which to base his recommendation[,] nor did he have any empirical data related to the traffic impact of yoga studios, the Property's prior nonconforming use. [] Tavani did not even observe the [the Parking Area] itself <u>until after he prepared the Tavani [r]eport</u>. [] Tavani, based his opinions <u>solely</u> upon information supplied to him by Jeronimo[s]. He also based his opinions upon criteria established by [Trip Generation Manual] in the ITE, which contain[s] no data as to the traffic produced by a yoga studio. In contrast, Appellant's witnesses, [] Rufo and [] Barrist, both who had offices at Appellant's Property and who regularly parked in the [the Parking Area], testified that the yoga studio never caused an interference with the [Parking Area].

Appellant Br. at 41.

Generally, a witness may only testify if he/she has personal knowledge about a matter. *See* Pennsylvania Rule of Evidence (Rule) 602. However, Rule 602 provides an exception for expert testimony, stating, "[**t**]**his rule does not apply to a**

**witness's expert testimony** under Rule 703." Pa.R.E. 602 (emphasis added).  Rule 703 states:

> An expert may base an opinion on facts or data in the case that the expert **has been made aware of** or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Pa.R.E. 703 (emphasis added).  Thus, the ZHB did not err in considering Tavani's testimony.  As fact-finder, the ZHB was free to evaluate witness credibility and weigh the evidence.  Substantial evidence supported the ZHB's conclusion that Jeronimos satisfied its burden to prove the proposed nonconforming use is no more detrimental than the prior nonconforming use.  This Court discerns no error in the ZHB's conclusion.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

TRDS 441 Hector Associates, LP,     :
               Appellant     :
     :
     v.     :
     :
Conshohocken Zoning Hearing     :     No. 1316 C.D. 2022
Board     :

## O R D E R

AND NOW, this 3rd day of July, 2023, the Montgomery County Common Pleas Court's October 17, 2022 order is affirmed.

_____
ANNE E. COVEY, Judge